## Case No. 18,195.

### YUENGLING v. JOHNSON.

[1 Hughes, 607;[1] 3 Ban. & A. 99.]

Circuit Court, E. D. Virginia. Sept. 7, 1877.

SUIT FOR INFRINGEMENT OF PATENT—PRELIMINARY INJUNCTION—NEW COMBINATION—MECHANICAL EQUIVALENTS.

1. Since the passage of the judiciary act of June 22d, 1874, and the adoption of the Revised Statutes of the United States, the provision of the judiciary act of 1793 [1 Stat. 334], requiring reasonable previous notice of a motion for a preliminary injunction to be given, stands repealed.

[Cited in Industrial & Min. Guaranty Co. v. Electrical Supply Co., 7 C. C. A. 476, 58 Fed. 737.]

2. At the time of granting an order to show cause against a motion for a preliminary injunction, a United States court or judge may, under section 718 of the Revised Statutes, and in patent cases, under section 4921, grant an immediate restraining order to be in force until the decision of the motion, for the purpose of preventing irreparable injury to complainant.

3. In respect to interlocutory injunctions, United States courts and judges have a larger discretion in patent cases than in other cases, conferred by section 4921.

4. In deciding upon applications for interlocutory injunctions in patent cases, the action of the commissioner of patents at Washington usually makes a prima facie case for or against granting them.

5. Where a patent is for a peculiar combination or arrangement of old devices, and not for a new device, the patentee is not entitled to insist upon mechanical equivalents.

On bill of injunction [by David G. Yuengling, Jr., against Fountain D. Johnson] to enjoin the infringement of a patent right. Motion for a rule to show cause against a preliminary injunction was made on August 8th, 1877, in the circuit court at Norfolk; and also a motion ex parte, without notice, for an immediate restraining order. Exhibits were filed with the bill, consisting of the affidavits of experts, and extracts from the records of the patent office. The extracts showed that a pat-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

ent had been refused by a primary examiner to the Moffett register for tallying drinks in bar-rooms, as interfering with Fountain's patent for an improvement in fare-registers, 188,-349; and the extracts also showed that on the 5th August, a board of examiners of the patent office had, on appeal, affirmed the decision of the primary examiner. The affidavits showed that in the opinion of the affiants as experts the Moffett register did infringe the Fountain register. The bill showed that the right of Fountain's patent for the state of Virginia had been purchased by and duly assigned to Yuengling, the complainant. On the bill and exhibits the court gave an order requiring the defendant to show cause against the motion for a preliminary injunction at Alexandria, on the 4th September proximo, and also an immediate restraining order meantime against the making, using, or vending of the Moffett register. On the power of the court to grant an immediate restraining order on ex parte motion without notice, the judge filed the following note in the record of the case, on the 3d September:

HUGHES, District Judge. On the 8th of August the complainant filed a bill of injunction in this court in term at Norfolk, and moved for a temporary injunction in accordance with the prayer of the bill, and for an immediate restraining order. He also filed sundry documents and affidavits, making out a prima facie case for an injunction. The object was to prevent one Fountain D. Johnson, manufacturer of a certain mechanical register called the Moffett register, from selling and delivering these instruments, it appearing that he was about to deliver a large number of them to the auditor of public accounts of Virginia, to be distributed by him to retail liquor dealers throughout the state for use. The evidence filed with the bill showed that skilled officers of the patent bureau of the United States had officially decided this Moffett register to be an infringement of a patent, the exclusive right to use which was owned by the complainant for the state of Virginia; and it was plain, if this should prove true, that the state was about to embark, in a futile manner, with an improper instrument, upon a new plan of taxation devised by her legislature, to the injury of the rights of the complainant, and that this was likely to be done in a few days.

It being apparent to the court that in case the pretensions of the claimant were true, the injury and confusion resulting would be irreparable, and that the complainant might have no recourse except to the liberality of the legislature of the state, an order was entered by which: 1st. The defendant in the bill was required to show cause at Alexandria, on the 4th instant, why the motion for a temporary injunction should not be granted. 2d. Restraining the defendant and all others meantime from making, using, or vending

30 Fed.Cas.—57

the said Moffett register; and, 3d. Requiring the complainant to file a bond in the penalty of ten thousand dollars to answer any orders of this court against him in this cause.

The expediency of this order seemed obvious to the court; but it felt at first some doubt of its power to grant the temporary restraining order, except after reasonable previous notice served. Upon a critical examination of the condition of the law on the subject, however, this doubt was removed, as will appear from the following review of the legislation of congress,—and the order was given:

Section 5 of the judiciary act of congress of March 3, 1793 (chapter 22, Acts 1793, 1 Stat. 334, 335), concludes with the words: "Nor shall a writ of injunction be granted in any case without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving the same." The greater portion of the provisions of this act of 1793 were incorporated into the Revised Statutes of June 22d, 1874, c. 12; but the foregoing clause requiring reasonable previous notice to be given in all cases of injunction was left out, and therefore stands repealed by section 5596 of the Revised Statutes.[2] Instead of this provision the seventh section of the judiciary act of June 1st, 1872 (chapter 255, 17 Stat. 197), was inserted, which is in these words: "Whenever notice is given of a motion for an injunction out of a circuit or district court, the court or judge thereof may, if there appears to be danger of irreparable injury from delay, grant an order restraining the act sought to be enjoined until the decision upon the motion, and such order may be granted with or without security, in the discretion of the court or judge." This act had already been in force for two years before the enactment of the Revised Statutes, and had virtually not only repealed the clause quoted from the judiciary act of 1793, but also rendered subordinate to its own provisions that part of rule 55 in equity requiring previous reasonable notice to be given of motions for injunction. While the clause of the act of 1793 in question was in force there were many decisions of the supreme and circuit courts of the United States enforcing it, and these rulings of the courts have gone into the digests and text-books in use by the bar. But when the law itself fell, of course these rulings of the courts and teachings of the text-books ceased to be of authority in contravention of the later law. But even before the passage of the judiciary act of June 1st, 1872, an act of congress revising, digesting, and consolidating all the laws relating to patent rights was passed July 8th, 1870 (see 16 Stat. 206), and a section enacted in it authorizing the courts of the United

[2] The language of section 5596 is: "All acts of congress passed prior to said first day of December, 1873, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof; etc., etc., etc."

States to deal with injunctions in patent cases in a special manner. This section placed injunctions in patent cases on a different footing from other injunctions. In this particular class of cases the courts were released from the requirement to adhere strictly to the rules of practice prescribed by law or rule of court in general for the federal courts sitting in equity, and the circuit courts were "vested with power upon bill in equity, filed by any party aggrieved, to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable." Thus was authority given to grant injunctions in patent cases, not upon such limited terms as were at the time required by law or rules in equity to be observed in other cases by the circuit courts of the United States sitting in equity, either as to notice, security, or other requirement; but authority was given to grant them in patent cases on such terms as accorded with the course and principles of courts of equity in general, and as the particular court in which the motion was made "might deem reasonable." This law made injunctions in patent cases exceptional, and conferred on United States circuit courts an unrestricted discretion as to the terms of granting injunctions in them. This provision of the law of 1870 has been carried into the Revised Statutes, with slight literal modifications, and stands now the law of the land in the form of section 4921. Thus, in patent cases, where the emergency was urgent, the court might grant injunctions without reasonable previous notice, before the law of 1872. The passage of the judiciary act of June 1st, 1872, has given this power in all cases, and now injunctions may be granted in any case deemed exigent by the court, without previous notice, whether it be a patent case or not. The terms of the law of 1872, section 718, are, that "whenever notice is given of a motion for an injunction," the court or judge, if irreparable injury or delay be likely to result from delay. may restrain temporarily until the motion can be heard. "Whenever" means "at" whatever time notice is given, and does not mean "after" whatever time. Simultaneously, therefore, with the time of giving the rule to show cause against the motion, the court may grant an order restraining the act threatened until the decision of the motion. There is no doubt of the power under section 718 to instantly restrain in any urgent case. But even if that were not so as to injunctions in general, there is no possible doubt of the power under section 4921 to enjoin in patent cases without previous notice; a power which, however, should always be exercised with great caution.

The motion for a preliminary injunction was heard at Alexandria on the 4th of September, and was for three days quite elaborately argued by counsel.

John B. Young and Hill & Ellsworth, for complainants.
W. W. Crump, Daniel A. Grimsley, and James G. Field, Atty. Gen. Va. (then recently appointed to succeed the late R. T. Daniel, deceased), for defendant.

The order to show cause had required the defendant to file his answer to the bill and sustaining affidavits by the 28th of August, which had been substantially done. On the first day of the argument, defendant's counsel produced in court a patent for the Moffett register just issued to Moffett & Deane by the commissioner of patents. At the conclusion of the argument, the court rendered the following decision:

HUGHES, District Judge. Most of the questions which have been argued at bar will be more properly considered at the final hearing of this cause, and must be adjourned until that time. The motion is now heard after three weeks' notice, on bill, answer, and affidavits. The court will consider now only such questions as necessarily bear upon the motion for a preliminary injunction. It must endeavor as far as practicable to avoid committing or concluding itself on every question which will arise at the final hearing upon evidence regularly taken. The question now to be determined is, whether the complainant is entitled to a preliminary injunction. As his right to the exclusive use of the Fountain patent in Virginia may be assumed as undeniable, the principal inquiry for the court is whether the Moffett register is an infringement of it. Even that question is not now to be finally decided, and the court ought not and is not bound to commit itself finally upon it.

The fact of infringement is denied, and the point to be now determined is whether the fact is prima facie made to appear with such certainty as to justify the court in granting a preliminary injunction against the use of the instrument pendente lite. The prima facie aspect of the case has been reversed since the 8th of August, when the temporary restraining order was granted. Then the action of the patent bureau had been such as to make, in the opinion of the court, a prima facie case for the complainant. Now the case in that particular is changed. The action of the patent bureau is such as to make a prima facie case for the defendant; for the commissioner of patents, whose action is final in that bureau, has reversed the judgment of his inferior officers, and virtually pronounced that the Moffett register is not an infringement of the Fountain register, by issuing a patent to Moffett & Deane for their invention as new. It is true that the issuing of patents is not conclusive upon the courts. Patents are subject to review by the courts. Suits in a very large proportion of patent cases are but means of appeal to the courts from the action of the patent office. Yet

while this is so, that action must always carry great weight with the courts. It is always very strongly persuasive with them. Patents are the results generally of contests between accomplished experts, and after such contests of the matured judgment of officers selected and appointed by the president for their extraordinary competency and skill, I think it is hardly going too far to say, following Mr. Justice Grier, in Goodyear v. Dunbar [Case No. 5,570], that the action of the patent office is sufficient to make such a prima facie case as to justify the action of a court on almost any motion for a preliminary injunction. If, indeed, in any case the general unanimous testimony of experts united in condemning the action of the patent office, in such case a court might well hesitate to treat that action as constituting a prima facie case for or against a preliminary injunction. But when, as in the present case, the weight of expert testimony is nearly evenly balanced, a court may safely presume that the action of the patent office, taken after a sharp contest between patent lawyers and experts, is prima facie correct. On this ground alone I think I would be justified in refusing a preliminary injunction in the present case. But as a court is not at liberty to surrender itself to an unquestioning reliance upon the decision of another tribunal, when the duty and responsibility are upon itself to act upon its own convictions, I will state briefly the view of the facts of the case by which I am led to concur, for the present, in the judgment of the commissioner of patents.

The patent of Fountain is not for the invention of the mechanical devices used in making up his instrument, or of any of them. These are all old and in familiar use by the public. Fountain's patent is only for a particular combination and arrangement of these old and well-known devices in a manner to serve a particular purpose. Moffett & Deane's patent is of the same character. They employ old and well-known devices also; and their patent is for a particular arrangement and combination of these devices in a manner to serve a particular purpose other than that of the Fountain register. And it is a fact, obvious from an inspection of the two instruments, that the devices employed in one instrument are not identical with those employed in the other; and that the arrangement and combination of the respective devices made use of in each are different. Fountain claims the invention of the worm meshing into a cogwheel to impart motion to the indexes. Moffett & Deane use no worm. The striking apparatus of the two instruments are different. Fountain has a single spring attached to the hammer, without any means of withdrawing the hammer instantly from the bell. Moffett & Deane have two springs, one to throw the hammer against the bell, and another to instantly withdraw it. Moffett & Deane use a pinion to drive the registering apparatus; Fountain uses no pinion. Fountain's instrument is portable, and contrived especially for the purpose of registering fares taken on public conveyances; while Moffett & Deane's is intended to be stationary, and is contrived for the purpose of tallying drinks taken in a bar-room. Fountain, in his specifications, claims that "his invention is an improvement in fare-registers," "adapted to be carried in the hand," consisting in an "arrangement and combination of parts whereby full and half fares are registered, and an alarm sounded as rapidly as collected by the conductors," having "on its face one dial and two separate hands." In his specifications he speaks of his instrument as nothing more than a fare-register; and in alluding to devices for registering hundreds, thousands, and ten thousands, he expressly declares that these "form no part" of his instrument, thus indicating that his instrument was intended only for a fare-register. These latter devices are essential parts of Moffett & Deane's register. Moffett & Deane's organization and combination of old devices is also for a special purpose, and that purpose one which was not contemplated by Fountain, and for which Fountain's contrivance could not be used conveniently without material alteration. I think the doctrine of Mr. Justice Clifford and Judge Clarke in Crompton v. Belknap Mills [Case No. 3,406], is a sound one; that when the patent is for a peculiar combination of old devices the patentee cannot insist upon mechanical equivalents.

In general mechanics, the pinion may be the equivalent of the worm; but when one invention claimed is a combination of devices including the worm, another invention of a combination including the pinion differs from it in the very fact of using the pinion. It would be almost absurd to hold that a patent for a particular manner of using the worm would be infringed by a patent for a particular manner of using the pinion. We are taught at school that the lever, the windlass, and the pulley are all one and the same in the mechanical principle involved; yet a combination of several devices, of which a pulley should be one, might not, in fact, even remotely resemble a combination in which a lever or a windlass should be used. I think it is a just ruling of the courts that mechanical equivalents cannot be insisted upon in inventions which consist of the mere arrangement of old devices. The same seems to me to be the case with regard to the purpose for which a combination is invented. The invention of a new device is in general patentable without reference to the object it is designed to accomplish, and is good against any subsequent invention of the same device designed for any other object. But it seems to me that this is not necessarily the case where the invention is merely of a combination of old devices. In such inventions the purpose aimed at, the form of the structure, its portableness or non-portableness, whether

it is used as a fixture or carried in the hand; —are elements which, though any one of them might not determine its character with reference to another invention of a combination of devices, yet all, together, might unite to constitute a different instrument. I repeat, however, that I do not wish to be considered as concluding myself or the court in its decision at the final hearing. It is sufficient for me to say that the complainant has not made a prima facie case so strongly in his favor as to warrant the court in awarding a preliminary injunction; and the motion is therefore denied. The order denying the motion will also dissolve the temporary restraining order which was granted on the 8th of August, and put the defendant under bond to account for the number of instruments manufactured by him and his receipts from their sale. The bond of the defendant must also be given with reference to the great number of suits which complainant may be obliged to bring in the event of a decree in his favor at the final hearing.

In accordance with this opinion bond was required of the defendant in the penalty of $20,000, conditioned as indicated. The case was continued for final hearing at Richmond to the 17th day of October, during the fall term of the circuit court.