INDUSTRIAL & MINING GUARANTY CO. v. ELECTRICAL SUPPLY

CO. et al.

(Circuit Court of Appeals, Sixth Circuit. September 20, 1893.)

No. 98.

1. MECHANICS' LIENS—RAILROADS.
    Under Rev. St. Ohio, § 3208, relating to liens against railroads, and Act April 10, 1884, declaratory of the meaning thereof, the right to a lien is restricted to claims for labor performed or materials furnished for the construction of the road, depot buildings, and water tanks, and cannot be extended to a claim for furnishing an electric lighting plant to hotel premises at the instance of a railroad company.

2. SAME.
    The general lien law of Ohio (Rev. St. § 3184, as amended by act of April 15, 1889) gives no right to a lien upon a railroad for materials used in and for its construction.

3. SAME—ELECTRIC LIGHTING PLANT.
    Materials furnished for the construction of an electric lighting apparatus, railway, and power house are not within the provision of the general lien law of Ohio, giving a right to a lien for machinery or materials furnished for "erecting, repairing or removing a house * * * or other structure."

**4.** CIRCUIT COURTS—JURISDICTION—COLLUSIVE SUIT — CONTINUING INJUNCTION.
    A suit in a United States circuit court, against a railway company and
    others, to foreclose a mechanic's lien claimed under a state statute for
    materials alleged to have been used by the company in the construction
    of its railway and other works, was brought by procurement of one of
    the defendants, to enable him to file a cross bill against his codefendants,
    residents of the state, to obtain an injunction against them, and to evade
    the effect of proceedings in the state courts; and it appeared that, under
    the state statutes, complainant was entitled to a lien for part of its
    claim only, much less than $2,000. *Held*, that the circuit court had no
    jurisdiction, and its order continuing the injunction granted on the cross
    bill must be reversed.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

In Equity. Bill by the Electrical Supply Company against the Put-in-Bay Waterworks, Light & Railway Company, James K. Tillotson, the Industrial & Mining Guaranty Company, John P. Carrothers, H. H. Warner, and others to foreclose a lien for materials furnished. Defendant Tillotson filed a cross bill against the complainant and the other defendants, and procured a temporary injunction. A motion by the Industrial & Mining Guaranty Company to dissolve the injunction was overruled, and an order entered continuing the injunction. The Industrial & Mining Guaranty Company appeals. Reversed.

Statement by SWAN, District Judge:

This appeal was taken under section 7 of the act of March 3, 1891, establishing circuit courts of appeals, and enacting "that where upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted or continued by an interlocutory order or decree in a cause in which an appeal from a final decree may be taken under the provisions of this act, * * * an appeal may be taken from such interlocutory order or decree granting or continuing such injunction to the circuit court of appeals." The interlocutory order or decree complained of issued upon the cross bill hereinafter mentioned, and continued an injunction granted September 10, 1892, without notice, restraining the appellant, and H. H. Warner, and John P. Carrothers, during the pendency of the suit, from selling, negotiating, or otherwise disposing of any or all of the bonds of the Put-in-Bay Waterworks, Light & Railway Company, then in control of said defendants, and received by them under a certain agreement specified in the order.

The material facts presented by the record are as follows: The original bill in the cause was filed by the Electrical Supply Company, a Connecticut corporation, against the Put-in-Bay Waterworks, Light & Railway Company, an Ohio corporation, James K. Tillotson, a citizen of Ohio, John P. Carrothers, a citizen of New York, the Industrial & Mining Guaranty Company, a New York corporation, H. H. Warner, a citizen of New York, and others. The relief ostensibly sought was the enforcement of an alleged mechanic's lien for the sum of $2,787.04, for supplies and materials furnished by complainant under a contract with the railway company, and used by the latter, as the bill alleges, in the construction of its lighting apparatus and railway upon the following described premises, viz.: "The power-house building, situated on lots 471, 472, 473, 474, and 475, in Victory Park addition of Put-in-Bay island, and on and along poles, ties, track, and other structures of the said defendant upon Put-in-Bay or South Bass island, Ottawa county, Ohio, all of which premises are the property of said defendant." To the bill is attached an itemized and verified statement of the supplies and materials for which the lien is asserted, a copy of which was filed with the recorder of Ottawa county, September 7, 1892. The bill avers

that the defendants named, other than the railway company, claimed to have some interest in the premises upon which the lien is asserted, and prays that they may be required to appear and set up such claim or interest as they may have. It further prayed an accounting with the principal defendant, that a lien be decreed on its property for the sum found due, and for a sale of the property. This bill was signed by L. G. Richardson in his own name, as solicitor for plaintiff. He also verified it on the 9th of September, 1892. On that day a subpoena was issued thereon, returnable on the first Monday in November, with a memorandum or rule indorsed, requiring defendants to enter their appearance in the cause on or before the first Monday of October. No service of the subpoena was had upon either appellant, or Warner, or the Railway Company Equipment Company. It was served September 10th upon all the other defendants. On the same day, Tillotson filed his answer and a cross bill against the codefendants, the appellant, H. H. Warner, and John P. Carrothers, setting forth that he had procured the incorporation of the principal defendant, the Put-in-Bay Waterworks, Light & Railway Company, to construct and operate waterworks, lighting apparatus, and an electric railway on South Bass island, with a capital stock of $150,000, in shares of $100 each, of which the corporation retained all but 150 shares taken by Tillotson, and 5 shares necessarily distributed among a sufficient number of persons to organize the corporation, and fill the offices required by the statutes of Ohio, and that he (Tillotson) and said corporation were in effect one person and identical. That, to procure the means to construct the waterworks, light works, and railway, he had the corporation issue 125 bonds of $1,000 each, dated July 16, 1892, secured by a first mortgage on all the real and personal property of the corporation on South Bass island, which mortgage ran to the Atlantic Trust Company, trustee. That on July 1, 1891, he contracted with the corporation to convey to it the right of way and property necessary for the construction of its railway, and to construct thereon a single track electric railway and power house, and all other structures and machinery necessary for the completion of the waterworks, electric works, and railway to be, built by said corporation, for which the company was to pay him the remaining 1,345 shares of its stock, and the 125 bonds of $1,000 each, which were to be delivered as Tillotson might call for them if he should need them for the construction of a plant. The bonds were delivered to him, as agreed, but he failed to raise the money on them required for his contract. That he subsequently was induced by Carrothers to place the bonds with the appellant and Warner for negotiation under a contract dated June 25, 1892, whereby they were to negotiate the securities, to pay a certain claim of the Central Thomson-Houston Company, amounting to $23,500, to advance to Tillotson $15,000 in three sight drafts, and to pay him July 20, 1892, $10,000, and the same amount every 15 days thereafter until the total sum paid, inclusive of the Central Thomson-Houston Company's claim and the advance of $15,000, should amount to $118,750. The contract also provided that the $100,000 of capital stock of the Put-in-Bay Waterworks, Light & Railway Company "becomes and is the absolute property of the said party of the second part."

The charge is that Carrothers, Warner, and the Industrial & Mining Guaranty Company wholly failed to carry out said contract, and to negotiate or sell any of the bonds, or to account for the same in any manner, and have failed to pay any of the moneys except the drafts for $15,000, and that they refused to account for or return the bonds and stock to Tillotson, who is the owner and entitled to the possession thereof; alleging that Carrothers and Warner will sell, negotiate, or make way with the bonds and stock and their proceeds, and that Carrothers is a man of no pecuniary responsibility, and that the road has not yet been completed by Tillotson, because of the default of the appellant and Warner and Carrothers, and that such default "is a continuing damage to him, (Tillotson,) and that their default is causing him irreparable injury, and will so continue to do unless said defendants are restrained by the order of this court." The answer and cross bill pray an order against the appellant and Warner and Carrothers, restraining them from negotiating any of the said bonds or

stock, and a perpetual injunction to the same end; also, the appointment of a receiver to take charge of the railway property of which Carrothers had taken possession, with authority to the receiver to care for and operate the same under the order of the court in the interest of all concerned; and that, if plaintiff is found to have a lien, and a sale therefor be ordered, the rights of Tillotson in said bonds and stock may be fully protected. The record shows that July 25, 1892, after the transfer of the stock in question to appellant, defendant Carrothers was, with Tillotson's consent, duly elected president of the railway company and a new board of directors chosen, and that Tillotson was on that date displaced as vice president and general manager of the company; that Tillotson, claiming that appellant and Warner and Carrothers had not fulfilled their agreement for the negotiation of the bonds of the company, refused to surrender possession of the road to Carrothers and the new directorate, or to permit them to operate it, and he held possession thereof until September 3d, when the railroad company obtained possession thereof, except the books, papers, and certain personal property secreted by Tillotson, by virtue of a writ of replevin. It also appears without contradiction that upon the same ground, after the railway company had thus obtained possession of its road, Tillotson secreted the motor cranks of its cars, the pins used thereon connecting the same with the electric current, stopped the pump which supplied the water necessary to furnish power, and otherwise sought to prevent the operation of the railway, and that the court of common pleas of Ottawa county, upon the complaint of the company, enjoined Tillotson and his associates from interfering with the company's enjoyment of the possession and control of its property and business. The appellant, it is admitted, paid the $15,000 in drafts as stipulated in its contract, and has assumed and agreed to pay the $23,500 to the Central Thomson-Houston Company, mentioned in said contract, and the claim of the Westinghouse Electric Manufacturing Company, amounting to $20,016.66. which was a lien upon the property, making about $59,000, in all, of payments made and obligations incurred by appellant, but it declined to make further payments under said contract until the road should be completed and the incumbrances thereon removed, and a perfect title to the property be made. Appellant claims that by reason of the defective title of the railway company to its right of way and property, and the incumbrances thereon, appellant would be liable to the holders and owners of the bonds and stock disposed of by it. Appellant further claims that Tillotson represented the property of the railway company as clear and unincumbered, whereas it was largely involved. Although Tillotson denies making these representations, the sworn answer of the appellant and the affidavits of Carrothers, Warner, Earl, and Footner positively affirm that he did, while Tillotson's denial is not corroborated. Appellant professes its readiness to fulfill its contract when the railroad is completed and the title to the property is perfect and unincumbered.

September 10, 1892, a temporary restraining order was issued on this answer and cross bill as prayed, and L. S. Baumgartner was appointed receiver of the property, with authority to take possession thereof forthwith. Baumgartner gave bonds on the same day as such receiver in the sum of $5,000. On the same day a subpoena returnable on the first Monday of November was issued on this cross bill, on which was indorsed a memorandum requiring defendants to enter their appearance on the first Monday of October; otherwise, the cross bill would be taken pro confesso. This subpoena was served upon Carrothers on the day of its issue, but was returned not found as to Warner and the appellant. The injunction complained of was issued on this cross bill against appellant, Warner, and Carrothers. This was served on Carrothers on the same day, but as to the other defendants was returned September 16th, "Not found." On the 15th of October following, the receiver, stating that it would be necessary for him to store during the winter the four trailing cars and four motor cars of the railway company, and to care for its engines, dynamos, motors, and other apparatus and machinery, and to erect a building and employ labor for that purpose, and to pay freight on said cars, filed his petition praying authority for that purpose to borrow money and issue interest-bearing receiver's certificates

therefor in the sum of $5,000, as the needs of the property might demand. On the same day the issue of these certificates was authorized, and they were made a first lien on the railway. They have been issued and negotiated. Meanwhile, and on September 26th, the railway company, Carrothers, and the appellant filed their answers to the cross bill, denying every material allegation therein on which the claim to relief was predicated, and on October 29th the appellant, upon its answer, and upon affidavits, moved for a dissolution of the injunction, and the railway company moved for the discharge of the receiver. Both motions were founded on the ground that no notice had been given to those defendants of the application for an injunction and for the appointment of a receiver, and upon the denial of the allegations of the cross bill. These motions were denied December 22, 1892, as was also a motion to modify the order appointing the receiver, and the order was made that day that appellant, Carrothers, and Warner deliver to the clerk of the court the 125 bonds and the $100,000. of stock of the Put-in-Bay Waterworks, Light & Railway Company on or before January 5, 1893, to be by the clerk retained "for the care and preservation of the same, and for the purpose of preserving the interests of all parties therein, as may be determined upon the further hearing of this suit." On the same day, on the petition of the receiver, another issue of certificates amounting to $5,000 was authorized and made a first lien upon the property of the railroad, "the proceeds to be used in the care and preservation of the property." No service of process was ever made on defendant H. H. Warner, nor has his appearance been entered in the case. From the order of the court, made December 22, 1892, refusing to dissolve the injunction of September 10th, and continuing the same in force, the Industrial & Mining Guaranty Company took and perfected this appeal.

In support of the motion for the dissolution of the injunction and the discharge of the receiver, among other affidavits filed was that of Franklin S. Terry, the manager and attorney in fact of the complainant, the Electrical Supply Company, who states that on or about September 6, 1892, the plaintiff corporation was approached by Mr. Richardson, who represented. himself to be an attorney, and that he was "familiar with the affairs of the Put-in-Bay Waterworks, Light & Railway Company," and advised the plaintiff corporation to file a lien against the Put-in-Bay Waterworks, Light & Railway Company for the amount of its claim, $2,787.04, and to authorize him to commence a suit against the Put-in-Bay Waterworks, Light & Railway Company in behalf of the Electrical Supply Company, and to bring suit in the federal court asking foreclosure of said lien and for an accounting; that the object of said suit was for the purpose of enabling the defendant J. K. Tillotson to file thereon his cross petition for the purpose of having a receiver appointed. Relative to the amount and nature of the claim for which the complainant's bill was filed, Terry's affidavit further states "that this plaintiff corporation was induced to include all sums due for material furnished for the use of the Hotel Victory Company in our account against said railroad; that the material actually used in the construction of the Put-in-Bay Waterworks, Light & Railway Company amounted to $861.23; that the balance of said material, to the amount of $1,925.81, was used inside said Hotel Victory; * * * that all of said material was ordered by said defendant J. K. Tillotson, as vice president of said corporation; that it was shipped to the said defendant corporation, and was charged on the books of the plaintiff corporation to the said Put-in-Bay Waterworks, Light & Railway Company. This affiant further says that the allegation in its said petition, wherein the said plaintiff corporation is made to allege that it furnished said material to said J. K. Tillotson, either as an individual or contractor, is untrue, and was known to be untrue by said Tillotson and said attorney, L. G. Richardson; that said Richardson prepared the lien said plaintiff's petition filed in this action, and advised the plaintiff's representative, as its attorney, that said lien and said allegation of said petition were proper ones for this plaintiff to verify, and in accordance with his advice said petition was verified by the representative of this plaintiff corporation." The statements of this affidavit are not controverted in any particular, nor is there of record here any attempt to explain or qualify them.

J. B. Foraker, for appellant.
Doyle, Scott & Lewis, for J. K. Tillotson.
L. G. Richardson, for complainant.

Before TAFT and LURTON, Circuit Judges, and SWAN, District Judge.

SWAN, District Judge, (after stating the facts.)[1]  1. The appellant insists that as the temporary injunction was granted by the district judge September 10, 1892, at the June term, under the provisions of section 719 of the Revised Statutes of the United States it could not "continue longer than to the circuit court next ensuing, unless so ordered by the circuit court;" that the next term was the December term, 1892, at which no order was made by the circuit court continuing the injunction, and therefore it became inoperative. This contention is founded on a misconception of the powers of the district judge, and fails to give proper effect to his action in refusing to dissolve the injunction at the December term. The circuit court may be held by the associate justice allotted to the circuit, by either circuit judge, by the district judge, or by any two of these. This is the express provision of the statute. Rev. St. U. S. § 609; Insurance Co. v. Dunham, 11 Wall. 22; Gray v. Railroad Co., Woolw. 63; Vulcanite Co. v. Folsom, 3 Fed. Rep. 509; Robinson v. Satterlee, 3 Sawy. 134, 140. The district judge holding the circuit court has all the authority conferred by law upon either of the judges empowered to hold that court. His action, therefore, while holding the circuit court, in refusing to dissolve the injunction granted by himself at the previous term, was as effectual to continue it in force as if the court had been held by a full bench. Parker v. The Judges, 12 Wheat. 561. This objection to the injunction therefore fails.

2. A more serious objection, however, is that the injunction was granted without notice, in violation of general equity rule 55, which declares that "special injunctions shall be grantable upon due notice to the other party by the court in term, or by a judge thereof in vacation, after a hearing, which may be ex parte if the adverse party does not appear at the time and place ordered." This rule was evidently founded on section 5 of the judiciary act of 1793, (1 Stat. p. 334,) forbidding the granting of a writ of injunction "in any case without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving the same." It is held in Yuengling v. Johnson, 1 Hughes, 607, 610, that the omission of this clause from the Revised Statutes operated to repeal it by the provision of Rev. St. § 5596, and that it was also impliedly repealed by section 7 of the act of June 1, 1872, (17 Stat. 197.) Section 7, above referred to,

[1] Note by the Clerk. The circuit judges, regarding the question of the jurisdiction of the circuit court as the only point presented by the record necessary to be determined, limit their concurrence in this opinion to what is said on that point.

stands as section 718 of the Revised Statutes, and reads as follows:

"Whenever notice is given of a motion for an injunction out of a circuit or district court, the judge thereof may, if there appears to be danger of irreparable injury from delay, grant an order restraining the act sought to be enjoined until the decision upon the motion, and such order may be granted with or without security in the discretion of a court or judge."

While this provision obviously enlarges the power of the court, it certainly preserves the principle of the repealed act of 1793, and of general equity rule 55. The issue of a restraining order, which may be granted ex parte, is by the express language of this section made dependent upon the existence of two conditions,—the giving of notice of a motion for an injunction, and an apparent danger of irreparable injury from delay. The first of these conditions is not met by the fact that the cross bill prays an injunction as ancillary to the relief sought, but notice of a motion for that remedy must have been given or be served simultaneously with the notice of motion for an injunction. No such motion was made, or notice given, in this case. Whether the cross bill makes a case of "irreparable injury from delay," within the statute, may well be doubted, for, upon the facts stated in the cross bill, Tillotson has a legal right of action for any breach of the agreement made with appellant, and his cross bill shows no impediment to the recovery of damages at law, nor any reason why such damages will not afford him full redress. Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. Rep. 249. The fair and necessary implication from the language of section 718, considered in connection with the practice which obtains in the federal courts, and that of the high court of chancery of England, on which it is founded, is that, as before the statute, so now, the extraordinary remedy of injunction—including restraining orders—requires for its exercise a clear case of threatened injury reasonably to be apprehended, and which can only be thus averted, and for the redress of which the recovery of damages would not give adequate compensation. The only purpose of such an order is to preserve the status of litigants for such time as may be necessary, according to the practice of the court, to bring the matter in issue to a hearing upon motion in the regular way, in order that both sides may be heard. When such a hearing has been had, the court may grant or refuse the injunction. The fact that the statute makes the two conditions mentioned indispensable to the granting of a restraining order for a limited time shows indisputably that it was never intended to clothe the courts with power to enjoin a defendant indefinitely or embarrass his business ex parte, and without notice, except where notice of the application would itself be productive of the mischief apprehended by inducing the defendant to accelerate the completion of the act sought to be enjoined before process could be served. No such case appears in the cross bill, and both the restraining order and the injunction of September 10th were therefore improvidently granted. Fost. Fed. Pr. § 231. The refusal to dissolve the injunction was also erroneous. Upon the

case made by the cross bill, the stock of the railway company, by the express terms of the contract, became the absolute property of appellant. The equities of the cross bill are denied by the answers of the Put-in-Bay Waterworks, Light & Railway Company, John P. Carrothers, and the appellant, and by the affidavits of Earl, Footner, Baruch, and Warner. Opposed to these are the affidavits of Tillotson and L. G. Richardson, the latter the solicitor of record for complainant, who also had acted as Tillotson's counsel up to the time of the filing of the bill. The affidavit of Mr. Lewis, also one of Tillotson's counsel, fails to confirm Tillotson's denial of the representations as to the title of the property. Without detailing the matters alleged in these affidavits, it is sufficient to say that, conceding to each affiant equal credibility and means of knowledge, the weight of evidence is clearly in favor of the appellant. The burden of proof was upon Tillotson to sustain the allegations of irreparable injury upon which the restraining order and injunction were granted. This he failed to do, and the injunction should have been dissolved, even if there had been only an equipoise of testimony.

3. The important question in the case is whether the amount involved is within the jurisdiction of the court, and whether, for reasons hereinafter stated, the court ought not to have dismissed the cross bill sua sponte. The affidavit of Terry positively avers that the material actually used in the construction of the Put-in-Bay Waterworks, Light & Railway Company amounted to but $861.23, and that the balance of the material, amounting to $1,925.81, was used inside the Hotel Victory. The act of March 3, 1887, confers upon circuit courts of the United States original cognizance of all suits of a civil nature at common law, or in equity, in which there shall be a controversy between the citizens of different states; where the matter in dispute exceeds, exclusively of interest and costs, the sum or value of $2,000. The statement in Terry's affidavit, just referred to is not denied, and there is nothing on the record to discredit its admission that the material for which the lien is asserted amounted in value to but $861.23. Its effect, therefore, is clearly to deprive this court of jurisdiction of complainant's claim. Williams v. Nottawa, 104 U. S. 209; Bernards Tp. v. Stebbins, 109 U. S. 341, 3 Sup. Ct. Rep. 252. It is urged in reply to this, however, that the Put-in-Bay Waterworks, Light & Railway Company is organized not only to build a railroad, but an electric plant and a waterworks plant, and that the property of the company subject to a lien is described in the railroad lien law of Ohio, (Rev. St. § 3208,) and the general mechanic's lien law of that state, (Rev. St. Ohio, amended section 3184;) that the plant of the company consists, not only of all of its railroad, but all the appliances in the hotel for the purpose of lighting the hotel and grounds, and this consisted, not only of a railroad, but of an electric light plant, which it put in the hotel, grounds, and buildings, under contract with the hotel, for the purpose of lighting.

By section 3208 of the Revised Statutes of Ohio it is provided that "a person who performs labor or furnishes materials for or in construction of any railroad, depot buildings, water tanks, or any

part thereof, to a contractor or subcontractor   * * *   shall have a lien for the payment of the same upon such railroad.   * * *."   In order to perfect such lien, the person furnishing the materials shall, within 40 days after he ceased furnishing the same, file with the recorder of the county where the materials were furnished an affidavit containing an itemized statement of the kind and amount of materials furnished, the time when the contractor or subcontractor for whom, and the section and place where on the line of the road, the materials were furnished, and the amounts due therefor, after crediting all payments and set-offs. Claimant must also, within 10 days after filing such affidavit, serve a notice on the secretary or other officer or representative of the railway company, by delivering or leaving a copy thereof at his usual place of residence or of doing business, or, if that cannot be served in the county, the recorder may serve the same by mail. This notice must state the fact of filing the affidavit, the county wherein filed, the amount claimed, and whether for labor, materials, or board furnished, and the contractor or subcontractor for whom rendered. Its further provision is that "any person failing to file his affidavit aforesaid, and serving the notice aforesaid within the time prescribed, shall be deemed and held to have waived all claims under this section against the railroad company." This statute gives a lien upon the railroad only for materials furnished a contractor or subcontractor, or in the constructing of such "railroad, depot buildings, and water tanks, or any part thereof." For whatever other structures materials may be furnished, no lien is given under this act. The act of April 10, 1884, (volume 81, Laws Ohio, 126,) declaratory of the meaning of section 3208, above cited, enlarges the list of those entitled to a lien by enacting "that the true intent and meaning" of those sections is that "any person or persons who perform labor or furnish material or boarding under contract, express or implied, with such railroad company, or any of its authorized agents, for the construction of such railroad, or any part thereof, is entitled to a lien for the payment of the same upon such railroad, as provided in section 3208 of the above-recited act." The only effect and purpose of this latter act was to give a lien under section 3208 as well as to persons furnishing materials directly to or performing labor under contract with a railroad company, as to those who dealt with contractors or subcontractors, who were protected by section 3208. Neither act, however, purports to give a lien upon a railroad for anything not used in its construction as a railroad, or that of its depot buildings or water tanks. Whatever materials complainant furnished to, or were used by, the railroad company in providing the Hotel Victory with an electric lighting plant, are clearly neither within the intent nor the language of section 3208, which confines the lien to material furnished for the construction of the railroad, depot buildings, and water tanks. If section 3208, as amended in 1883, (volume 80, Laws Ohio, p. 99,) was still in force when the affidavit was filed, September 7, 1892, (Exhibit D of the original bill,) and the last of the materials were furnished within 40 days before that date, of which there is no evidence in the record, as Terry's affidavit fails to designate the nature of the ma-

terials furnished to the railroad company and the dates when the same were furnished, as distinguished from those used inside the Hotel Victory, it may be that the affidavit of lien (Exhibit D) was seasonably filed. But there is nothing to show when complainant ceased to furnish material for the construction of the road, or that notice of this affidavit was given, as required by the statute.

Coming, now, to the contention that the validity of the lien may be rested upon section 3184 of the Revised Statutes of Ohio, we find that that section, though amended by the act of April 15, 1889, (volume 86, Ohio Laws, 373,) has not been changed in any particular material to the inquiry here. As it stood prior to this amendment in Williams' Revised Statutes of Ohio, (pages 643, 644,) it was construed by the supreme court of that state in Rutherfoord v. Railroad Co., 35 Ohio St. 559, and held not to confer a lien upon a railroad. This is also the construction given by the supreme court of the United States to the mechanic's lien law of North Carolina, the language of which is even broader than that of the Ohio statute. Buncombe County Com'rs v. Tommey, 115 U. S. 122, 5 Sup. Ct. Rep. 626, 1186. With reference to the argument that it confers a lien upon the electric lighting plant, it is only necessary to quote its language so far as material to repel that contention. It enacts that "a person who performs labor, or furnishes machinery or material, * * * for erecting, altering, repairing, or removing a house, mill, manufactory, or any furnace or furnace material therein, or other building, appurtenance, fixture, bridge, or other structure * * * by virtue of a contract with the owner, or his authorized agent, shall have a lien to secure the payment of the same, upon * * * such house, mill, manufactory, or other building, or appurtenance, fixture, bridge, or other structure, * * * and upon the material and machinery so furnished, and upon the interest of the owner in the lot or land on which the same may stand, or to which it may be removed." It would be an exceedingly strained construction of this language to hold that the material for which the lien is claimed was furnished for "erecting, altering, repairing, or removing" a house or other structure mentioned in the statute, and that, too, in the face of the averment of the bill that the materials "were used in the construction of the lighting apparatus and railway of the defendant," and in a power house already erected.

The lien here prayed is upon the railroad as an entirety, and that is the theory of the bill. The premises and property against which it is asserted is the railroad, its motive and lighting apparatus and appliances, poles, ties, track, and other structure, including that part thereof located in the power house, the cost of which is not stated. The language of the section, and the considerations stated in Rutherfoord v. Railroad Co., cited supra, forbid the application of this statute. It results, therefore, from the concession of the complainant limiting its claim to the sum of $861.04, that the circuit court had no jurisdiction of the subject-matter, and should have dismissed the bill.

This conclusion equally disposes of Tillotson's "cross bill," so called. If it be a cross bill, it is a mere auxiliary and a dependency

of the original, and the dissolution of the original bill necessitates the same disposition of its incident. Cross v. De Valle, 1 Wall. 1, 14; Dows v. City of Chicago, 11 Wall. 108, 112. But it would be a misnomer to call this bill a cross bill. Beyond the fact that it names the complainant as a party, it has but a nominal relation to the subject-matter of the original bill. It tenders no defense to its averments, and makes no issue with complainant respecting the matters charged therein,' but seeks to introduce a new controversy, not at·all necessary to be decided in order to have a final decree on the 'case presented by the bill. In Ayres v. Carver, 17 How. 591, the original bill of complaint sought to enforce an alleged title to several tracts of land claimed by different defendants. Two of the defendants, after answering, filed a cross bill against complainant and the other defendants, setting forth the substance of the original bill, and 'then charging that they had obtained a title to the several tracts in controversy, or portions of them, long prior to the title claimed by their codefendants, prayed that their cross bill might be heard at the same time with the original bill, and that any claim that complainant might set up to the several tracts of land claimed by them in the cross bill might be set aside and annulled. Of this pleading the court says:

"As it respects the cross bill, it may be proper to observe that the matters sought to be brought into the controversy between the complainants in that and the codefendants do not seem to have any connection with the matters in controversy with the complainant in the original bill. Nor is it perceived that he has any interest or concern in that controversy. These two complainants in the cross bill set up a title to the lands in dispute which they insist is paramount to that of their codefendants, and seek to obtain a decree to that effect, and to have the possession delivered to them. This is a litigation exclusively between these parties, and with which the complainant in, the original bill should not be embarrassed or the record incumbered. * * * It [the cross bill] should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject matter of an original and independent suit."

In the light of this authority, the so-called "cross bill" in this cause 'is an original bill brought by Tillotson, a citizen of Ohio, against Carrothers and the railway company, also citizens of Ohio, and appellant and Warner, citizens of New York. Of this suit the federal court has no jurisdiction, because of the citizenship of the parties. Its plain purpose was to enable Tillotson to litigate in that court his differences with some of his codefendants, which no more affected the litigation of the principal suit than would any other controversy between them as to lands, stocks, or other property. It was therefore an original, and not a cross, cause. Rubber Co. v. Goodyear, 9 Wall. 809, 810. That this was its object is evidenced not only by the undisputed affidavit of Terry that Richardson procured complainant to file its bill in the federal court, and informed him that the object of the original suit was for the purpose of enabling Tillotson to file thereon a cross petition for the purpose of having a receiver appointed, but also by the promptitude with · which Tillotson filed his so-called "cross bill,"—the next day after the filing of the original bill. Richardson makes two affidavits appearing in the record. In neither does he contradict any statement

contained in the affidavit of Terry, nor does Tillotson.  Tillotson must therefore be regarded as confessing the truth of its statements, particularly that which charges that the material used in the construction of the railway amounted in value to but $861.23.  If Tillotson and his attorney knew that fact, (and the former must have known it, as he ordered and used the material,) the original suit which they induced complainant to bring for their own ends was flagrantly collusive,—a mere sham and pretense to create "a fictitious ground of federal jurisdiction;" and under the act of March 3, 1875, it was the duty of the court to have dismissed it as not really and substantially involving a dispute or controversy properly within its jurisdiction, and because the parties were improperly and collusively made and joined for the purpose of creating a case cognizable under the act.   Hawes v. Oakland, 104 U. S. 450; Farmington v. Pillsbury, 114 U. S. 138, 5 Sup. Ct. Rep. 807; Little v. Giles, 118 U. S. 596, 7 Sup. Ct. Rep. 32; Robinson v. Anderson, 121 U. S. 522, 7 Sup. Ct. Rep. 1011.   As has been said in Bernards Tp. v. Stebbins, 109 U. S. 353, 3 Sup. Ct. Rep. 252:

"In the matter of the jurisdiction of the federal courts, the discrimination between suits between citizens of the same state and suits between citizens of different states, is established by the constitution and laws of the United States; and it has been the constant effort of congress and of this court to prevent this discrimination from being evaded by bringing into the federal court controversies between citizens of the same state."

That the complainant was culpable in lending the use of his name to promote Tillotson's fraud upon the jurisdiction of the court, with knowledge of his purpose, and was responsible for the negligence (to use no stronger term) of its assistant manager in making oath to the amount of materials used in the construction of the railroad, is undeniable.   But this may, perhaps, be palliated in some degree by the fact that it was done under the advice of its attorney, who, it was known, however, was acting in Tillotson's interest.   The agreement, nevertheless, was "to obtain an object forbidden by law," and therefore fills the definition of "collusion," which, as is said in Jessop v. Jessop, 2 Swab. & T. 301, "may be, among other things, by keeping back evidence of what would be a good answer, or by agreeing to set up a false case."   The real and responsible offenders against the act of congress are Tillotson and Richardson, who devised and procured the scheme apparently for the purpose of avoiding the effect of the action of replevin and of the suit in equity in the state courts, in the latter of which, as the record shows, Tillotson was still under injunction from interfering with the operation of the railroad, to the control of which he asserted substantially the same rights as those pleaded in his cross bill here. That litigation appears to be still pending, and constitutes an insuperable obstacle to the jurisdiction of the circuit court of the United States to appoint a receiver of the railroad, or otherwise interfere with the possession required by the action of replevin, or with the effect of the injunction, or in any manner to nullify its action in the equitable suit.   Every issue presented by the cross bill as to the respective rights of Tillotson, appellant, Carrothers,

and Warner, was open to contest, in either the action of replevin or the suit in equity in the state court, if not in both. Taylor v. Carryl, 20 How. 594; Buck v. Colbath, 3 Wall. 341; Society v. Hinman, 13 Fed. Rep. 161. For these reasons it is obvious that the circuit court had no jurisdiction of this suit or its dependency, the cross bill, and its orders awarding the injunction, and its refusal to dissolve the same, were erroneous, and must be vacated and set aside, and the original and cross bills should be dismissed without prejudice, and with costs of the circuit court and of this court to appellant, against Tillotson on the cross bill, and against complainant on the original bill.

While it is the general rule that, where a cause is dismissed for want of jurisdiction, costs are not awarded to the prevailing party, nevertheless, by section 5 of the act of March 3, 1875, (18 Stat. 472,) the circuit court is required, in cases coming within that section improperly brought in or removed to that court, "to make such order as to costs as shall be just." This was manifestly designed to avoid the application of the general rule above referred to. Railroad Co. v. Swan, 111 U. S. 387, 388, 4 Sup. Ct. Rep. 510. As this court has jurisdiction of the order appealed from, appellant is also entitled to costs of this court under the authority last cited.

With reference to the receiver's certificates, issued under the order of the circuit court, so far as the same have been negotiated and their proceeds applied to the preservation and protection of the property pending this litigation, the discharge of liens thereon and indebtedness owing by the Put-in-Bay Company for labor which had accrued before this suit, all just and reasonable expenditures should be allowed to the receiver, as made in the common interest of all concerned in the property. An order should be entered in the cause requiring the receiver to render a full and detailed account of his expenditures, the purposes for which, the persons to whom, and the dates when the same were made, and referring it to a master to examine and report upon said accounting; the appellant and the Put-in-Bay Waterworks, Light & Railway Company, Warner, and Carrothers to be notified by the master of the times and places of examination, and to be permitted to appear and submit testimony, and cross-examine the witnesses produced by the receiver. The compensation of the receiver should be borne by Tillotson, at whose instance he was appointed, and would seem to be recoverable from the obligors of the injunction bond.

The decree of the circuit court continuing the injunction is therefore reversed, and a decree will be entered in accordance with this opinion, dismissing the original and cross bills for want of jurisdiction, with costs, as herein directed.

TAFT, Circuit Judge, (concurring.) The order appealed from should be reversed, and the injunction dissolved. But $861.23 of the claim for $2,787.04 set up in the complainant's bill was for articles furnished and work done in the construction of the electric railway of the defendant railway company. The remainder of the claim was for material furnished and work done in and upon

the Hotel Victory, which did not belong to the railway company. These facts are not now denied. It follows that, under the statutes of Ohio, cited by Judge SWAN, complainant was entitled to a lien upon the railway only for $861.23. The averment that more than $2,000 in work and material was furnished in the construction of the railway was falsely made, and for the collusive purpose of invoking the equitable jurisdiction of the federal court. The whole object of the bill was to enable Tillotson, a defendant, a citizen of Ohio, to file a cross bill against codefendants named in the bill, citizens of Ohio and other states, and thus obtain in the federal court an adjudication of a controversy ordinarily cognizable only in the state courts. It was clearly a case where the jurisdiction of the federal court had been collusively sought. This appeared at the hearing upon the motion to continue the injunction, and should have led the circuit court to dissolve the injunction. It is said that the jurisdictional question involved ought to have been regularly raised upon the record, by plea or otherwise. We are not concerned with that question of procedure here. The issue before the circuit court was whether an order enjoining the defendants from selling certain bonds should be continued pending the trial of issues raised upon bill and answer and cross bill and answer. The circuit court was made to know that its equitable jurisdiction had been collusively and improperly invoked. It then became its duty not to continue the injunction. This is the sole ground upon which I vote for a reversal of the order appealed from. I do not see how the question of the preliminaries necessary to the issue ex parte of an injunction has any place in this discussion. The order appealed from was one continuing an injunction. The appellant and Carrothers, the only two defendants against whom the injunction had any operation, had full notice of the hearing upon the motion to continue the injunction, and were present by attorneys. It is immaterial whether the original order of injunction was issued without proper notice or not, if, upon the merits, the injunction was a proper, equitable remedy to preserve the status quo. To hold otherwise would be to make substantial justice yield to a shadowy technicality. Nor can I agree that, the question of collusion aside, the cross bill of Tillotson was not germane to the action as brought in the bill. The bill prayed for a foreclosure of the lien, a sale of the railway, and, as incident and necessary to such reliefs, a marshaling of all other liens upon the property, and a distribution of the proceeds among the lienholders and others interested. It was proper for each defendant to set up his right in the property or its proceeds. Tillotson claimed a mortgage lien on the property to secure certain bonds, his title to which had been disputed by another codefendant. The complainant was entitled to have both claimants brought in, so that the property might be sold free from the lien of the claim in dispute between them. Being in court, their rights to the proceeds of the sale to be decreed under the prayer of the complainant must necessarily be determined before a distribution could be made, and this would, of course, involve the settlement of the entire dispute as to title between them. I am

not prepared to say that Tillotson's cross bill did not, on its face, state a good case for equitable relief. It is not necessary now to decide the question. We have only jurisdiction on this appeal to reverse the order of injunction. We have no power to direct a dismissal of the bill, or the vacation of an order appointing a receiver. Those are matters which, by the terms of section 7 of the court of appeals act, remain within the cognizance of the circuit court until a final decree is entered and appealed from. While I fully concur in the view that the circuit court, before dismissing the bill for want of jurisdiction, may require payment of the reasonable expenses incurred in the case, and preservation of the property taken within its custody, I do not think we can make any order on this appeal touching the matter. Our only action should be to reverse the order continuing the injunction, at the costs of the appellee.

LURTON, Circuit Judge, (concurring.) I do not think it necessary to decide more than that the jurisdiction had been obtained by collusion, and the injunction should have been dissolved. The appeal gives this court jurisdiction to determine no other question. The cause should be remanded for further proceedings.