## WHITE v. TOLEDO, ST. L. & K. C. R. CO.

### (Circuit Court of Appeals, Second Circuit. March 19, 1897.)

CONSTITUTIONAL LAW—EQUITY RULE 67—EXAMINERS—TAKING TESTIMONY OUTSIDE DISTRICT—COMPULSORY ATTENDANCE OF WITNESSES.

The power conferred upon the supreme court by the act of August 23, 1842 (5 Stat. 518; Rev. St. § 862), to prescribe the forms and modes of taking and obtaining evidence, is valid and constitutional, and under the amendment to the sixty-seventh equity rule, adopted pursuant to such power, the courts of the United States are authorized to appoint examiners to take testimony orally beyond the limits of the district in which a suit is pending, and the attendance of witnesses before such an examiner may be compelled by the courts in the district to which the examiner is sent.

In Error to the Circuit Court of the United States for the Southern District of New York.

J. Tredwell Richards, for plaintiff in error.

Joseph King, for defendant in error.

Before PECKHAM, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is a writ of error to set aside an order of the circuit court for the Southern district of New York which adjudged the plaintiff in error to have been guilty of contempt. Irvin Belford was appointed special master by the circuit court of the United States for the Northern district of Ohio, in a bill in equity for the foreclosure of a railroad mortgage which was pending in that court, and was directed to take testimony in the suit in the city of New York. Upon the petition of one of the parties, an order was granted by the circuit court for the Southern district of New York which directed the clerk of that court to issue a subpœna addressed to Isaac W. White, then of said city, and directing him to appear before said master at a named time and place in said city and testify in that suit. The subpœna was duly issued and duly served upon White, who refused to obey and did not obey it. Upon an order requiring him to show cause why he should not be punished for contempt, he appeared before the circuit court, and upon hearing he was adjudged guilty of a contempt of court by reason of his disobedience to the order of the subpœna.

The questions presented upon the writ of error are whether the circuit court for the Northern district of Ohio had power to appoint an examiner or a special master to take testimony in the city of New

York, to be used in a suit pending in that court, and whether the circuit court for the Southern district of New York had power, by its subpœna, to compel a witness in its district to testify under oath before such special master in a cause pending beyond its jurisdiction.

The ancient general English chancery rule excluded oral testimony, and received at the hearing only that which was contained in written depositions. 1 Greenl. Ev. § 312. But section 30 of the judiciary act of 1789 provided that "the mode of proof by oral testimony and examination of witnesses in open court shall be the same in all the courts of the United States, as well in the trial of causes in equity and of admiralty and maritime jurisdiction as of actions at common law." Section 25 of the statute of April 29, 1802 (2 Stat. 166), modified this provision, and left "it to the discretion of the courts in those states where testimony in chancery is taken by depositions, to order, on the request of either party, the testimony of the witnesses to be taken by depositions." Conn v. Penn, 5 Wheat. 424. Section 6 of the statute of August 23, 1842 (5 Stat. 518), empowered the supreme court, from time to time, to prescribe and regulate the forms and modes of taking and obtaining evidence in all cases. This section is now reproduced, so far as equity and admiralty suits are concerned, in sections 862 and 917 of the Revised Statutes, so that the supreme court has been vested with sufficient apparent power upon the subject. At the December term, 1861 (1 Black, 6), the sixty-seventh rule in equity was amended by the supreme court so that, after notice by either party that he desired the evidence in the cause to be taken orally, "all the witnesses to be examined shall be examined before one of the examiners of the court, or before an examiner to be specially appointed by the court." The amendment further provided that in case of refusal of witnesses to attend to be sworn, or to answer any question put by the examiner or by counsel or solicitor, the same practice shall be adopted as is now practiced with respect to witnesses to be produced on examination before an examiner of said court on written interrogatories. This practice had long been specified in the statute of January 24, 1827 (4 Stat. 197), which is reproduced in section 868 of the Revised Statutes, and which provided, in substance, that, when a commission was issued by any court of the United States for taking the testimony of a witness named therein at any place without any district, the clerk of any court of the United States for such district should issue a subpœna to the witness, and if the witness, after service of the subpœna, refused to appear, the judge of the court whose clerk issued the subpœna could proceed to enforce obedience or punish the disobedience. The same practice is prescribed in equity rule 78, which is a reproduction of equity rule 28, announced by the supreme court in 1822 (7 Wheat. xi.), and one of the rules prescribed by the court in pursuance of the authority conferred by section 2 of the act of May 8, 1792, which will be hereafter stated (1 Stat. 272). Story v. Livingston, 13 Pet. 359.

This historical review of the statutes shows—what is familiar—that a court of the United States for one district had long been empowered to send a commissioner into any other district to take the testimony of a person residing in such district, and that the courts of

the United States for the district wherein such testimony was to be taken were directed to issue process to secure and enforce the attendance of such witness before the commissioner or examiner, and that he was authorized to administer an oath to the witness. It also shows that in pursuance of power for that purpose, the validity of which will hereafter be considered, the supreme court, by its amendment of the sixty-seventh rule, adapted or enlarged this statutory system of practice and rules in regard to taking testimony by written interrogatories to the taking of testimony in equity cases orally by specially appointed examiners or masters, and provided that the same system should exist to compel the attendance of a witness, and of punishment for disobedience to the subpœna, or for refusal to be sworn. That the intention of the sixty-seventh rule was to provide that examiners could be appointed to take testimony orally beyond the territorial limits of the district in which the suit was pending was decided by Mr. Justice Bradley in Railroad Co. v. Drew, 3 Woods, 691, Fed. Cas. No. 17,434, and was not strenuously denied upon the argument of this case. The point which was relied upon was that the jurisdiction of the courts of the United States was a statutory jurisdiction, and could not be enlarged by a rule of the supreme court. This proposition, thus generally stated, is true, but it is not an adequate statement either of the nature or the extent of the authority by virtue of which the rule was made. Congress had in 1792 exercised, to a certain extent, its authority in regard to the "forms and modes of proceeding" in equity cases, "subject to such regulations as the supreme court shall prescribe" (1 Stat. 276), intending, as increased business should indicate the need of additional rules, to intrust to the supreme court the duty of making them as necessity required. The extent of this class of powers, their character, and the propriety of committing them to the supreme court, were fully considered by Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1,—an action at common law,—who said, in substance, that, while congress could not delegate to the courts powers which "are strictly and exclusively legislative," yet there were other subjects, of "less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details," but that it was true that it was not easy to draw the exact line which separates the "important subjects, which must be entirely regulated by the legislature itself," from the details, which they can properly intrust to others. The effect and the extent of the conclusions which Chief Justice Marshall reached were again considered by the supreme court in Beers v. Haughton, 9 Pet. 338, 359, and were stated by Judge Story as follows: "The constitutional validity and extent of the power thus given [by the statute of 1792] to the courts of the United States to make alterations and additions in the process, as well as in the modes of proceeding in suits, was fully considered by this court in the cases of Wayman v. Southard, 10 Wheat. 1, and Bank v. Halstead, Id. 51. It was there held that this delegation of power by congress was perfectly constitutional; that the power to alter and add to the process and modes of proceeding in a suit embraced the whole progress of such suit, and every transaction in it,

from its commencement to its termination, and until the judgment should be satisfied; and that it authorized the courts to prescribe and regulate the conduct of the officer in the execution of final process, in giving effect to its judgment. And it was emphatically laid down that 'a general superintendence over this subject seems to be properly within the judicial province, and has always been so considered,' and that 'this provision enables the courts of the Union to make such improvements in its forms and modes of proceeding as experience may suggest.'" It thus appears that the constitutional character of the power under which the supreme court subsequently acted in making rule 67 was early the subject of discussion, that it was established, and that no jurisdictional question need now arise. Inasmuch as the validity of the power to appoint examiners to take testimony in another district and circuit, and of the power of the United States court within that other district to compel the witness to attend and take an oath before the examiner, is sustained by this inquiry, it seems proper to suggest that in the practical administration of this authority, and in the interest of economy, caution should be exercised not to grant too roving and unrestrained a commission to examiners to take testimony. The fear which was expressed in Arnold v. Chesebrough, 35 Fed. 16, lest these proceedings should become both unnecessary and expensive, is well founded. The order of the circuit court is affirmed, with costs.