## UNITED STATES v. STANDARD SANITARY MFG. CO. et al.

(Circuit Court, E. D. Pennsylvania. April 22, 1911.)

No. 661.

1. COURTS (§ 349*)—MASTERS—JURISDICTION—TAKING TESTIMONY IN DIFFERENT DISTRICT.

Where an examiner is appointed by the court of the district in which the suit is pending, as authorized by equity rule 67, to take testimony, he may lawfully discharge his duty in another district; the court of that district being authorized to issue subpœnas commanding persons residing within the district to appear and testify before such examiner or master.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 349.*]

2. COURTS (§ 349*)—MASTERS—JURISDICTION—TAKING TESTIMONY IN DIFFERENT DISTRICT.

Where a master is appointed to take testimony in the district in which a suit is pending, and proceeds to take testimony in another district, persons living in the latter district, whose legal domicile is elsewhere, may be compelled to appear, and any person found in such district, who answers a subpœna and appears before the examiner, may be lawfully examined.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 349.*]

3. COURTS (§ 349*)—EXAMINATION BEFORE MASTER—COERCING WITNESS—MATERIALITY OF TESTIMONY.

Where witnesses appear before a master taking testimony in a district other than that in which he was appointed, and on his refusing to answer questions an application is made to the court of such district to coerce the witness, it is the duty of such judge to compel the production of the evidence, although the judge deems it incompetent, irrelevant, or immaterial, unless the witness or the evidence is privileged, or it clearly and affirmatively appears that it cannot be competent, material, or relevant, and that it would be an abuse of process to compel its production.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 349.*]

4. CRIMINAL LAW (§ 42*) — IMMUNITY — PRIVILEGE AS WITNESS — SHERMAN ANTI-TRUST ACT—STATUTES—CONSTRUCTION.

The Sherman act (Act Cong. Feb. 25, 1903, c. 755, 32 Stat. 904 [U. S. Comp. St. Supp. 1909, p. 1142]), as amended by Act June 30, 1906, c. 3920, 34 Stat. 798 (U. S. Comp. St. Supp. 1909, p. 1168), provides that for the enforcement of the provisions of the act a specified sum was appropriated to employ special counsel to conduct proceedings, suits, and prosecutions thereunder, provided that no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he might testify in any proceeding, suit, or prosecution under the act, etc. *Held* that, though the act applies to witnesses, whether called in a criminal or a civil suit, it did not extend immunity to witnesses called by the defense in a civil suit to restrain alleged violations of the act, especially to defendants called by codefendants, the effect of which would be to render the statute abortive.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 42.*]

Suit by the United States against the Standard Sanitary Manufacturing Company and others to restrain the continuance of certain alleged conspiracies and agreements in restraint of interstate commerce in sanitary enameled iron ware. On motion of the Colwell Lead Company and others to compel their codefendants, Max Goebel and certain others, to answer questions. Denied.

See, also, 187 Fed. 229.

Edwin P. Grosvenor, Sp. Asst. Atty. Gen., and George W. Wicker-sham, Atty. Gen., for the United States.

Robert B. Honeyman, for defendant Colwell Lead Co.

Herbert Noble, for defendant witnesses.

Hillary C. Messimer, for McCrum and Gates.

HOLLAND, District Judge. This is a motion by defendants Colwell Lead Company, Jesse T. Duryea, and Bert O. Tilden to compel codefendants Max Goebel, Lloyd G. McCrum, Howard T. Gates, Francis J. Torrance, and Theodore Ahrens to answer certain questions. The motion is made in a suit in equity, instituted at Baltimore July 21, 1910, in the Circuit Court of the United States for the District of Maryland, and brought under section 4 of the Sherman antitrust act, to restrain the continuance of certain alleged conspiracies and agreements in restraint of interstate trade and commerce in sanitary enameled ironware.

There are about 34 individuals and 16 corporations defendants in this suit. The same individuals and corporations, charged with having combined and conspired in restraint of interstate trade in sanitary enameled ironware, were indicted on December 7, 1910, by the federal grand jury for the Eastern district of Michigan. The indictments and the bill in equity relate to the same matters and transactions.

In the Baltimore suit, in which this motion arose, a special examiner was appointed by the court October 22, 1910, by agreement, "to take and report to the court the evidence adduced or offered by the petitioner and the defendants, respectively, with full authority as such special examiner according to the rules and practice in such case made and provided." The order further provides "that said examiner may, upon application of any of the parties, hold such hearings and receive testimony in behalf of any party, at such time and such place without the district of Maryland as he may designate and appoint"; due notice being required. The order also provides "that the respective parties may from time to time agree as to the time and place of taking proofs outside of the district of Maryland."

The government completed the taking of its testimony on December 21, 1910, and on February 14, 1911, the defendants commenced the taking of testimony, and there have been hearings from time to time for this purpose.

The defense of the Colwell Lead Company, Duryea, and Tilden, set up by their answer to the bill, upon which they now rely, is, in the main, identical with that of the other defendants. There are, however, some minor differences, affecting particularly the manner of doing business by the company; and it insists that there is a necessity for it to call the other defendants to prove these allegations. The company, Mr. Duryea, and Mr. Tilden are represented in this motion by separate counsel; and the question here involved arose on April 4th, at a hearing in Philadelphia, called by their counsel. The testimony was being taken by the examiner appointed by the Maryland court. Subpœnas had duly issued from this court, and five witnesses were put upon the stand, each one of whom is a defendant in the criminal

proceeding and in the bill in this case.  None of these witnesses objected to appearing as such before the examiner at Philadelphia, and no objection to the taking of testimony was made by the witnesses themselves or the government until after they had refused to answer. All of them reside at points more than 100 miles from the district of Maryland, although none reside in this district.  They, however, appeared in answer to a subpœna before the examiner at a place agreed upon by the parties, and refused to answer certain questions put to them by counsel for the Colwell Lead Company, upon the ground that their answers might incriminate them.  Thereupon counsel for the company moved this court to compel them to answer, and the government contends that this court has no jurisdiction to entertain this motion, because none of the witnesses reside in this district.

From the statement in the government's brief, I take it that the taking of testimony at Philadelphia before the examiner, on the 4th day of April, had been agreed upon by the government and counsel for the company; and from the affidavit filed by the latter's counsel it appears that the names and the places of residence of the witnesses to be examined on behalf of the company at the meeting were given to the Assistant Attorney General a day or more before, so that the government was in possession of the information as to the legal domicile of the witnesses to be examined, and was also informed that the testimony of these witnesses would be taken before the examiner at this meeting.  The government appeared, but raised no objection to the examination of these witnesses here upon the ground that the legal residence of the respective witnesses was without this district.

[1] It has been determined that the appointment of a master or examiner by the court of the district where the suit is pending, under the sixty-seventh rule in equity, to take testimony, may lawfully discharge this duty in another district, and that the court in the latter district is empowered to issue subpœnas commanding persons residing in the district to appear and testify before such examiner or master. In re Steward (C. C.) 29 Fed. 813; Rose's Code of Fed. Procedure, § 1037b; Johnson Steel Street Rail Co. v. North Branch Steel Co. (C. C.) 48 Fed. 191; White v. Toledo, etc., Co., 79 Fed. 134, 135, 24 C. C. A. 467.

[2] Persons who are living in the latter district, whose legal domicile is elsewhere, can be compelled to appear (In re Steward, supra), and any person found in the latter district who answers a subpœna and appears before the examiner, may be lawfully examined (Blood v. Morrin [C. C.] 140 Fed. 918; Mutual Ben. Life Ins. Co. v. Robison, 58 Fed. 732, 7 C. C. A. 444, 22 L. R. A. 325).

If the witnesses were lawfully examined here, this would be the proper tribunal to entertain this motion; but it is further urged by the government that, even if this court can properly consider the motion, the witnesses should not be required to answer, because the questions put to them by counsel for the Colwell Lead Company, which they have refused to answer, are neither relevant nor material.

[3] It is urged that the amended answer of the company, Duryea, and Tilden sets up no separate defense from that of the other defend-

ants, except in minor details, in support of which the questions put to the witnesses were not at all relevant or material; but this, we think, is not a matter into which this court may inquire.

"It is not the duty of an auxiliary court or judge, within whose jurisdiction testimony is being taken in a suit pending in the court of another district, to consider or determine the competency, materiality, or relevancy of the evidence which one of the parties seeks to elicit. It is the duty of such a court or judge to compel the production of the evidence, although the judge deems it incompetent, irrelevant, or immaterial, unless the witness or the evidence is privileged, or it clearly and affirmatively appears that the evidence sought cannot possibly be competent, material, or relevant, and that it would be an abuse of the process of the court to compel its production." Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521; Dowagiac Mfg. Co. v. Lochren, 143 Fed. 211 [74 C. C. A. 341].

Having concluded that the testimony offered does not so clearly and affirmatively appear to be irrelevant and immaterial as to warrant its exclusion, and that the motion is properly entertained by this court, it follows that, if the witnesses are entitled to an immunity from prosecution under the act of Congress of February 25, 1903 (32 Stat. 904, c. 755 [U. S. Comp. St. Supp. 1909, p. 1142]), and its supplement (Act June 30, 1906, c. 3920, 34 Stat. 798 [U. S. Comp. St. Supp. 1909, p. 1168]), they will be compelled to answer, notwithstanding they have claimed their privilege of silence under the provisions of the fifth amendment to the Constitution.

The Colwell Lead Company insists that the testimony of these witnesses is important in support of its defense. The government, however, contends:

"That not one of these questions is material to the defense of the company, or of Mr. Duryea or Mr. Tilden, but that each of the questions is addressed to the witness defendant for the sole purpose of having him incriminate himself and thereby gain immunity."

Accordingly, the Assistant Attorney General, for the government, notified each witness, as he was called, that as the transactions being inquired into in this civil suit are the same transactions which are the subject of the Detroit indictments, it was probable that anything he (the witness) might say, which would be material, would incriminate him. He was accordingly advised that, relying upon the fifth amendment, he might refuse to answer questions upon these matters. He was further advised that, if he did answer, he would waive his constitutional privilege, and would gain no immunity thereby, and that, if counsel insisted that he answer, he should refuse until the court ordered him to do so. Thereupon the several defendants answered certain questions, but refused to answer others, and this proceeding is to determine whether they shall be ordered by the court to answer such other questions.

[4] The immunity statutes which are pertinent are those enacted for the enforcement of the provision of the Sherman act. They are the act of February 25, 1903, and the amendment of June 30, 1906. The Supreme Court held in Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, that the language of the act of February 25, 1903, is sufficiently broad to give immunity to a witness summoned on be-

half of the government, and that a witness so called is obliged to answer. The only question, therefore, involved in this case, is whether the immunity provision under consideration applies to these witnesses called by a defendant. If the act extends immunity to them, they must answer. They will not be permitted to claim their constitutional privilege of silence. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819. Was it, then, the intention of Congress, in enacting this immunity legislation for the purpose of enforcing the Sherman act, to extend its provisions to include witnesses called by the defense in any proceeding, suit, or prosecution under the act? Omitting all the parts of the immunity legislation, except that with which we are concerned in this case, it reads as follows:

"That for the enforcement of the provisions of the act entitled * * * 'An act to protect trade and commerce against unlawful restraints and monopolies,' * * * the sum of $500,000 * * * is hereby appropriated * * * to employ special counsel * * * to conduct proceedings, suits and prosecutions under said act, * * * provided that no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify in any proceeding, suit or prosecution under said act. * * * And the amendment enacted June 30th, 1906, provides that immunity shall extend only to a natural person, who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath."

It is unnecessary, in disposing of this motion, to inquire into the question as to whether Congress intended to restrict the provisions of the act to give immunity only to witnesses called by the government. The question here is whether or not Congress intended to give immunity from prosecution under the Sherman act to persons who are defendants in suits and prosecutions instituted by the government who are called as witnesses by their codefendants. Such a construction of the act of 1903 and its amendment would result in practically wiping out the criminal provisions of the Sherman act.

The main issue in the bill filed under section 4 of the act is the criminal fact upon which the indictments are founded under section 1. If the immunity can be claimed in a civil proceeding under the act, there seems to be no reason why it may not be claimed in a criminal proceeding for the same cause of action. If these defendants can be called by their codefendants as witnesses in a civil suit, they can be called by their codefendants as witnesses in the pending criminal prosecution. Any witness to which the act extends the immunity can be called in a criminal or a civil suit. There is no question but that any witness called by the government in a civil suit can as well be called in a criminal proceeding and compelled to answer. Equally true would it be that any other party's immuned witnesses (if there are any under the act) could be called in either a civil or criminal proceeding and receive immunity.

If, then, it was the intention of Congress to permit defendants to call each other and give them immunity, it is clear that the power to do so extended as well to civil proceedings as to criminal prosecutions. Was such the intention? If it was, it enables a defendant in either a civil suit or criminal prosecution under the act to be called as a witness for a codefendant, and thereby become immuned against

the conviction under the indictment, and each defendant could call the other, until they brought about an immunity of all the defendants in the indictment. It would follow that no conviction under the act could in any case be had, because the trial of the offenders would simply afford them the opportunity of calling each other as witnesses, and the result of the trial would be an expensive performance on the part of the government to enable the defendants to secure immunity. Such a construction, leading to the absurd and unreasonable results indicated, cannot, under the authorities, be adopted by this court, when the statute is susceptible of a rational construction, such as will enable a proper and effective enforcement of all the provisions of the act.

But, aside from the absurd results flowing from such a construction, the language of this immunity statute would indicate that Congress did not intend the act should receive the construction placed upon it by counsel for the Colwell Lead Company. It opens with a statement that the enactment is "for the enforcement of the provisions" of the Sherman act, among other acts mentioned in the enacting clause, and there is an appropriation made for the purpose of enabling the Attorney General "to conduct proceedings, suits and prosecutions" under the Sherman act and the other acts; and in order that the provisions of these acts may be enforced, there is a proviso granting immunity to certain persons against prosecution "on account of anything concerning which they may testify * * * in any proceeding, suit or prosecution" under these acts. The primary object apparently for the enactment of this legislation was "the enforcement of the provisions of the Sherman anti-trust act," together with the others mentioned; but there is nothing to indicate that it was the intention of the makers of the law to extend the privilege of immunity to witnesses called by the defense, especially defendants called by codefendants in a suit instituted by the government. It was not for the purpose of aiding the defense in "proceedings, suits or prosecutions" under the act, but for the purpose of "enforcing the provisions" of the acts, that the immunity clause was created.

Failing to find any warrant in the language used by Congress for the construction insisted upon by the Colwell Lead Company, and in view of the unreasonable and absurd results which would be brought about by such a view of the enactment, it is our duty, as was said in Reg v. Skeen, 8 Cox's Criminal Cases, 143, to put that construction on the language of the act which will make it effectual, and not make it abortive.

We hold that it was not the intention of Congress, in passing the immunity act for the enforcement of the provisions of the Sherman law, either in civil or criminal proceedings, to extend immunity to defendants called as witnesses by codefendants to testify in the latter's behalf, so that the motion to compel the witnesses to answer the questions is overruled.