**MATHIESON ALKALI WORKS v. ARNOLD, HOFFMAN & CO., Inc., et al.**

**ARNOLD, HOFFMAN & CO., Inc., v. MATHIESON ALKALI WORKS.**

Circuit Court of Appeals, First Circuit. January 19, 1929.

Rehearing Denied April 9, 1929.

Nos. 2266, 2267.

Charles P. Howland, of New York City (James F. Sandefur, Eldon Bisbee, and Rushmore, Bisbee & Stern, all of New York City, George H. Huddy, Jr., and Huddy & Moulton, all of Providence, R. I., Choate, Hall & Stewart, of Boston, Mass., and William Gresser, of New York City, on the brief), for Mathieson Alkali Works.

Edward F. McClennen, of Boston, Mass. (Claude R. Branch, William H. Edwards, and Edwards & Angell, all of Providence, R. I., on the brief), for Arnold, Hoffman & Co., Inc., and others.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. These appeals are from decrees of the District Court of the United States for the District of Rhode Island in four equity suits and one suit at law. By leave of this court these appeals were here consolidated into two appeals: No. 2266 includes appeals from an interlocutory and the final decree in each of the four equity cases; No. 2267 cross-appeals from the final decree in two equity cases and from the judgment in the suit at law.

The Mathieson Alkali Works, hereinafter called Mathieson, is a corporation organized under the laws of Virginia, having a place of business at Saltville in that state.

Arnold, Hoffman & Co., hereinafter called Arnold-Hoffman, is a corporation organized under the laws of the state of Rhode Island.

Mathieson was the complainant in two bills in equity in which it charged unfaithfulness and neglect of duty by Arnold-Hoffman, which acted as its sales agent in the sale of products manufactured by it and the Castner Company, owned and controlled by it, and which had a place of business at Niagara Falls, in the state of New York. Mathieson was also complainant in two bills in equity against John R. Gladding, who had been its assistant treasurer, treasurer, secretary, and a director, asking for an accounting of many of the transactions set out in its other bills.

Arnold-Hoffman brought two actions at law in the said court against Mathieson; one for repudiation of its contract executed September 8, 1919, appointing Arnold-Hoffman its selling agent for three years beginning January 1, 1920, and the other for breach of certain contracts to deliver certain products and for commissions.

By interlocutory decrees to which the parties agreed, the bills in equity and the two actions at law were consolidated and referred to a special master, "to take testimony presented before him and to report for the advisement of the court his findings of fact and conclusions of law upon all the evidence submitted to him. The master may act and take testimony without as well as within the jurisdiction of said court."

Mathieson, incorporated in 1892, was engaged in the manufacture of certain chemicals at its works at Saltville, Va. Soon after its incorporation, it entered into an oral contract by which a firm of which Edward E. Arnold was a member became the sole sales agent of its products.

Arnold-Hoffman was incorporated in 1899 and succeeded this partnership as sales agent. Of this corporation Edward E. Arnold became president and one of its directors, and continued as such during all the period of the transactions involved in the complainant's bills. He was also a stockholder and director in Mathieson and its president from its incorporation until 1901, and again in 1916, until September 11, 1919. During his second term as president the transactions occurred which are set out in complainant's bill.

After the incorporation of Arnold-Hoffman it continued to act as sales agent of the products of Mathieson and Castner by oral contracts until 1914, when a written contract for the term of five years was entered into between the parties.

Under this contract Arnold-Hoffman agreed to become the sole sales agent of Mathieson for all its products except bicarbonite of soda and chlorine gas, and also of Castner, the subsidiary of Mathieson. It was to receive a commission of 3 per cent. upon all sales, including those to itself, and guaranteed payment for all products sold by it. The contract also provided that Arnold-Hoffman might purchase any of the products manufactured by Mathieson, or its subsidiary company, the Castner, for retail trade or for jobbing; the products to be purchased to be decided by Mathieson.

It is apparent from the record that Edward E. Arnold was the dominating factor of Arnold-Hoffman, and that he enjoyed the full confidence of Mathieson.

A record was kept at the Works, both at Niagara Falls and at Saltville, of the purchases and also in the company's office at Providence, R. I. There was a monthly settlement between the parties, and the business of Mathieson prospered under the arrangement which had been made.

In 1916 James M. Edwards, who had been president, retired, and Arnold was elected president of Mathieson, and as president determined what sales should be made to Arnold-Hoffman, and also fixed prices.

The master found, and his finding was affirmed by the District Court, that Arnold did not dominate the board of directors of Mathieson; that it consisted of nine members; and that outside of any connection with Arnold-Hoffman there were five directors. But all of the facts disclosed in the record point to his influential management of Mathieson and domination of the board so far as sales were made to Arnold-Hoffman.

In 1919 there was a change in the control of the stock of Mathieson, and on June 12th of that year a new contract relating to the sales agency was prepared to be signed by Mathieson and Arnold-Hoffman. After consideration by the directors of Mathieson, it was signed September 8, 1919, to take effect December 31, 1919.

The new contract contained substantially the same provisions as the old, except that it provided that the board of directors of Mathieson should determine what sales should be made to Arnold-Hoffman, and also provided that, in case Edward E. Arnold should retire from Arnold-Hoffman, Mathieson might upon 60 days' notice terminate the contract, thus making it apparent that Mathieson still reposed confidence in the ability of Arnold and his loyalty to its interests.

The European war had continued for two years, and prices of all commodities, especially of products of the kind manufactured by Mathieson which could be used in making explosives, were largely advanced, and after the entry of the United States into the war, in April, 1917, there was a still further advance in prices more marked than in any of the preceding years.

The conduct of Arnold in connection with sales made by Mathieson to Arnold-Hoffman before the new contract went into effect, and before his term as president of Mathieson expired, caused the directors of Mathieson to lose confidence in him after an investigation following the election of a new president. As a result, the new agency contract of September 8, 1919, was repudiated January 2, 1920, before anything was done under it. In the sales to Arnold-Hoffman, Arnold had been acting as the president of both the buying and the selling corporation. He had assumed to act in a position where there was a constant conflict between interest and duty.

Arnold-Hoffman brought two suits against Mathieson in the District Court of Rhode Island, one for the breach of the contract by which it was to be continued as selling agent for a term of three years, and another for breach of contracts to deliver certain commodities which when Arnold was president of Mathieson it had contracted to deliver to Arnold-Hoffman.

Mathieson thereafter filed a bill of complaint against Arnold-Hoffman, charging unfaithfulness as a sales agent in various transactions therein described, asking for an accounting in these several matters, and also praying that Arnold-Hoffman be enjoined from prosecuting its suit at law against it for repudiation of the contract of agency.

In the other bill, it charged John R. Gladding while acting as assistant treasurer and secretary, and also as treasurer and secretary, with unfaithfulness to it in assisting Arnold-Hoffman in obtaining illegal contracts from Mathieson and otherwise in violating the duty which it owed to Mathieson as its sales agent.

To the two suits at law answers were filed by Mathieson setting forth substantially what it alleged in its bill in equity against Arnold-Hoffman.

Arnold-Hoffman filed an answer to the bill of complaint against it, alleging that Mathieson with full knowledge had acquiesced in all contracts made by Arnold-Hoffman as its selling agent; that there had been monthly settlements between them involving not only sales made by it as agent but also of sales made to it of products which it handled upon its own account.

Arnold had been connected with the firm and corporation which had acted as the sole selling agents of Mathieson since its incorporation in 1892. In its bill of complaint, Mathieson sought discovery of all matters relating to contracts made by its selling agent.

The District Court correctly ruled that discovery should be reserved until there should be a determination of the defenses of acquiescence and accounts stated, and that the master should proceed to a hearing of these defenses.

The master heard evidence upon the issues of acquiescence and accounts stated, and confined the hearing to them. He filed a report, March 28, 1924, sustaining these defenses as to certain transactions and overruling them as to others.

This report was affirmed by the court, and the case was sent back to the master for completion of the hearing on the merits, but the evidence was restricted to transactions as to which the defenses of acquiescence and accounts stated had not been sustained.

On July 12, 1926, the master filed an amended final report, sustaining Mathieson's charges with respect to transactions not found by him to have been barred by acquiescence and accounts stated, and held that the un-

faithfulness manifested by Arnold-Hoffman in these transactions justified repudiation of the agency agreement. He found for Arnold-Hoffman as to transactions in which Mathieson was held to have acquiesced or to be bound by an account stated.

The District Court sustained all of the master's findings in favor of Arnold-Hoffman, but overruled his finding in regard to one product—stick caustic—and also his finding that Arnold-Hoffman's conduct and unfaithfulness had been such as to justify a repudiation of the agency agreement.

The master found that the defenses of acquiescence and accounts stated were not sustained as to the sales of stick caustic, liquid chlorine, commissions on freight (evidently a pure mistake), and payment of commissions on products sold by the United States Alkali Export Association.

The District Court held that the stick caustic transaction did not come within the scope of the sales agency, and that Arnold-Hoffman owed no duty to acquire and impart to Mathieson information as to what profit it could make on resales.

■ We are met at the outset by the contention that the decision of the District Court is not reviewable here because the master took testimony outside of the jurisdiction of the District Court, and that the judge of that court in rendering a decision acted only as an arbitrator, and therefore his decision is not appealable but is final. It has been held that under federal practice the master can take testimony without as well as within the district where appointed. Consolidated Fastener Co. v. Columbian Button & Fastener Co. (C. C.) 85 F. 54; Bate Refrigerating Co. v. Gillette (C. C.) 28 F. 673; United States v. Standard Sanitary Mfg. Co. (C. C.) 187 F. 232; White v. Toledo, St. L. & K. C. R. Co. (C. C. A.) 79 F. 133. See note under Rule 62, Hopkins Federal Equity Rules, 21 C. J. 601; Simkins "A Federal Suit in Equity" (3d Ed.) p. 562.

The plaintiff has filed 85 assignments of error, and the defendant 27. It is evident that it would be impossible within the limits of this opinion to deal with each separate assignment, nor do we think it necessary to do so. The questions presented may be grouped as follows:

1. Whether there was error in limiting the right to discovery to matters in which the defenses of acquiescence and accounts stated were not sustained.

2. Whether Arnold-Hoffman, through its president Arnold, who acted also as the president of Mathieson, was charged with any fiduciary duty when sales were made by Mathieson to Arnold-Hoffman.

3. Whether the court was right in reversing the finding of the master as to stick caustic.

4. Whether the other findings of the master, affirmed by the judge, were sustained by substantial evidence.

5. Whether Mathieson was justified in repudiating the contract of agency, and whether the ruling and finding of the District Court that it was not should be sustained.

Upon the matter of discovery we have already indicated that the District Court in its discretion correctly limited discovery to the matters in which it should be found Mathieson had not acquiesced and was not excluded by settlements which had been made. Mathieson does not claim that there was any failure of duty in sales made by Arnold-Hoffman to others, but only to itself.

■ The learned judge of the District Court distinguishes the relation occupied by Arnold-Hoffman and the duties with which it was charged when acting as a sales agent from the position in which it was placed when it was a purchaser, stating that when it purchased goods it owed no duty to Mathieson and stood in no different relation from what it would to any other party from whom it might purchase; that it was under no duty to disclose the condition of the market, or the prevailing prices for goods which it purchased, nor resales which it had contracted to make.

In view of all the circumstances this cannot be so. Arnold, as the president of Mathieson, decided upon the sales to be made to the corporation of which he was also president, and determined prices. He was required to exercise the utmost good faith in such an anomalous position. As the president of Arnold-Hoffman, he must have known market prices and all the trade conditions relating to the products to be sold to Arnold-Hoffman which he had gained while Arnold-Hoffman acted as agent of Mathieson, and it was his duty to give to Mathieson the benefit of this knowledge.

The District Court has found, as did the master, that the allegation of the bill that the defendant had as sales agent sold goods to third parties at prices which were below what the defendant then knew to be the prevailing market price for such products was not sustained, and this was conceded by counsel.

The master and court have found that there were five transactions in which the defense of acquiescence and accounts stated was not sustained. These were the stick caustic contracts, the liquid chlorine contract of September 8, 1919, rebate on liquid chlorine for $2,419.54, commission on freight, and com-

mission on products sold by the United States Alkali Export Association.

█ The court and master differ, however, as to the construction to be placed upon these transactions. The master found that the stick caustic contracts and liquid chlorine contract were a sufficient basis for repudiation of the new agency contract of September 8, 1919, but this finding was not sustained by the court.

The product known as stick caustic is one prepared from caustic soda, of which Mathieson, owing to the purity of its caustic soda, had a practical monopoly. Up to the beginning of the World War in 1914, the total amount used in the United States was in the vicinity of 100,000 pounds annually. For several years previous to August 3, 1916, at which time Mr. Arnold for the second time became president of Mathieson, the contracts made between Mathieson and Arnold-Hoffman were on behalf of the former executed by James M. Edwards, its then president, and in no way connected with the defendant company. In 1914 Mathieson sold its entire output to Arnold-Hoffman at a price of 10 cents per pound, and the next year, while Mr. Edwards was still president, its whole output was sold to Arnold-Hoffman for delivery in 1916 at the rate of 17½ cents per pound. After Mr. Arnold became president, in 1916, he sold the entire output of this product to Arnold-Hoffman at the same price, 17½ cents per pound, although the defendant company had several days previously sold the same at a price of 22½ cents per pound, with the agreement that it would not sell this product to any one else. The next year Mr. Arnold as president again sold the entire output of stick caustic to Arnold-Hoffman for the same price, although it had a few days previously resold the same at an increased price of 24½ cents per pound. Besides the deliveries made under this 1917 contract at the price of 24½ cents per pound, the defendant sold to the same purchaser 10,000 pounds for 36 cents per pound and 4,000 pounds for 37 cents per pound. In the following year, 1918, Arnold-Hoffman quoted a price upon this product to the same purchaser of 36 cents per pound, but finally closed with another customer to take the entire output at 33 cents per pound, an increase of 8½ cents per pound over the previous year's contract, although by contract with Mathieson, acting through Mr. Arnold as president, it paid but 17½ cents per pound.

It thus appears that Arnold-Hoffman was constantly raising its price on resale to its purchaser which took the whole product, while the price to Mathieson was not in-creased. The increased cost of manufacturing, packing, and shipping was borne entirely by the manufacturer, and there was no increase in the cost of selling the same.

The only reason given by Arnold-Hoffman for raising its resale price was that Mathieson had been subjected to an increase in its manufacturing cost. In a letter of Arnold in 1918, in justification of its increase to a price of 36 cents per pound, he stated:

"The advance in our quotation for stick caustic soda is based on the increase in manufacturing cost as given to us by the Mathieson Alkali Works, Inc. By far the greater portion of the cost is for labor and packages, both of which have advanced greatly since your present contract was placed. * * * The goods that the Works are shipping you cost them a good deal more than they figured when the contract was placed, but they have no protection against this advance in cost."

In reply to a letter of the manager of the Works to Arnold protesting against the price fixed for stick caustic because of the advance in the cost of manufacture, Mr. Arnold replied that unfortunately the contract had been made with Arnold-Hoffman at that price.

Upon this evidence the District Court held as follows:

"Upon the whole evidence it is clear that 'stick caustic' was not during this period a commodity confided to Arnold-Hoffman as a matter within the scope of the sales agency; that it owed no duty to acquire and impart to the plaintiff information as to what profit it could make on resale. As we have said in the former opinion, in defining the products which should be confided to Arnold-Hoffman as sales agent, the parties were not acting within the scope of the sales agency. It therefore cannot be said in respect to this item that this is a case in which Arnold-Hoffman abused a confidential relation by withholding, if it did withhold, information as to the price at which it was reselling. * * *

"This matter of stick caustic, therefore, cannot be attacked upon the ground of constructive fraud arising merely from the relation of principal and sales agent.

"There is another aspect, however, which requires consideration and was apparently given great weight by the master. In dealing with Arnold, the president of the company, in relation to purchases, a buyer, whether a sales agent or a third person, could not profit by a contract in which he knew that the president was wrongfully betraying his duty to the corporation in whose behalf he was making the contract."

Objection was made that the transactions

in regard to stick caustic were not covered by the allegations in the complaint, and an amendment was made to cover them, although we think the general allegations contained in the bill were sufficient. Section 16 (e) alleges:

"That during the period between August 3, 1916, and September 11, 1919, the plaintiff and the Castner Company, acting through Arnold, purported to make numerous contracts with the defendant whereby the plaintiff and the Castner Company, respectively, sold and the defendant purchased at prices below and known by defendant to be below the then prevailing market prices therefor certain products manufactured by the plaintiff and by the Castner Company without the knowledge or consent of the Board of Directors of the plaintiff or of the Board of Directors of the Castner Company and without the knowledge or consent of any one (other than Arnold or Gladding) acting in behalf of the plaintiff or of the Castner Company; that said contracts were performed, and the defendant resold all of the merchandise so purchased by it from the plaintiff at a great profit to itself, the exact amount of which is unknown to the plaintiff but well known to the defendant."

The complainant moved to amend its complaint on June 11, 1927, after the final report of the master, by specifying "caustic soda in stick form" as one of the products which had been so purchased by the defendant. Motion to amend was denied, but without the amendment we think the general allegation in the bill was sufficient to cover this transaction.

The transactions in relation to stick caustic the District Court held did not justify a repudiation of the contract of September 8, 1919, and reversed the master's finding in this respect, although the court said in its opinion:

"It may be admitted that where a sales agent is dealing in a commodity on behalf of the principal and acquired information in regard to that commodity which he is selling, that information belongs to his principal and if possessed by the agent cannot be withheld from him while he is buying from the principal the same subject matter. In this particular it may be said that the duties of agent qualify the rights of the buyer and that it is impossible to separate the two."

Viewing the situation of Arnold as the president of both the purchasing and the selling companies, and that the purchasing company was acting as sole agent in the sale of the products of the seller, we think that the master was right in finding that Arnold did not exercise the good faith toward Mathieson which he owed it as its president; that the knowledge of market conditions which he must have had as president of Arnold-Hoffman and what he knew about prevailing prices for stick caustic was not used in the interests of Mathieson but entirely in the interests of Arnold-Hoffman and to increase the latter's profits at the expense of the former. He knew that the World War had caused a large advance in the price of this product, and that its manufacturing cost had been increased, but for three successive years he made a contract for its sale to Arnold-Hoffman at the same price at which it had been purchased by it before the war while Edwards was president.

As to the stick caustic transactions the court erred in reversing the finding of the master, both as to the right of the plaintiff to an accounting, and as to cancellation of the contract of September 8, 1919.

As to the contract in regard to liquid chlorine made three days prior to Arnold's retirement as president of Mathieson, the master found the price fixed by him to Arnold-Hoffman was too low. In regard to this commodity the court has found that Arnold-Hoffman was acting as a sales agent, and its principal was entitled to information as to the market, and that if before purchasing Arnold-Hoffman had resold it at a considerable advance in price, "it could not fairly withhold this information."

The master found the price was too low, and that a fair price would have been not less than 6 cents per pound.

The court distinguishes the relation of Arnold-Hoffman to Mathieson in buying this product from the relation sustained in the stick caustic transactions, because Arnold-Hoffman did not purchase the whole of the liquid chlorine manufactured by Mathieson, but only a substantial part of it, and therefore had in its possession information gained as a sales agent in regard to market prices which it could not fairly withhold from its principal, saying, "the prices for liquid chlorine were too low and that on that account, in view of the fact that this was an article within the scope of the sales agency, this contract is voidable. But it does not follow that this is a sufficient ground for the rescission of the three-year contract. That Arnold-Hoffman as buyer bought cheaper than under the circumstances it should have bought, and that it has failed to satisfy the master that the price was fair, falls short of proving actual fraud, and the master has not found actual fraud."

The contract in relation to liquid chlorine

was made but a short time before the expiration of the old five-year agency contract, which expired on December 31, 1919, and but three days before the resignation of Arnold as president of Mathieson was to take effect. The finding of the master with respect to liquid chlorine was affirmed by the court.

The liquid chlorine contract was entered into upon September 8, 1919, after the new contract by which Arnold-Hoffman was retained as selling agent for three years had been made, and the master found that the liquid chlorine contract offered additional ground for the repudiation by the plaintiff of its agency contract with the defendant, and that in making it Mathieson was justified in believing that undue preference had been given to the interests of Arnold-Hoffman over those of Mathieson, and that such preference "might naturally and logically be followed by preferences in other transactions, to the sacrifice of the plaintiff."

In relation to this contract the master found:

"This was a contract executed on September 8, 1919, between the plaintiff, acting through Mr. Arnold, as its president, and the defendant. It provided for the sale to the defendant of 1,500 tons of 2,240 lbs. each of liquid chlorine at 4½c. per pound. The previous contract for liquid chlorine had expired on August 22nd, 1919. This prior contract called for a price of 6c. per pound. The amount contracted for was very substantial, and if it did not involve the entire output of the plaintiff for the succeeding year, it involved a very great portion of such output. The new price was at a very substantial reduction over the old price—a 25% reduction. The contract was made by Mr. Arnold only three days before his retirement from the presidency of the Mathieson Alkali Works, which was on September 11, 1919.  *  *  * At first glance, it certainly looks like an effort on the part of the defendant, through Mr. Arnold, to consummate a contract in its own interest before he retired from the presidency and with none too zealous a regard for the interest of the plaintiff.  *  *  * It seems to me that the minimum price should have been 6c., when all the conditions at that time are kept in mind. In fact, it is very likely that a price substantially higher than 6c. might have been justified, for the reason that the plaintiff company, unlike all other manufacturers, was obliged to shoulder the very substantial expense of providing all containers.  *  *  * I do not consider it of serious consequence that the defendant resold this liquid chlorine at prices considerably in advance of 4½c. or even 6c., namely at prices ranging from 8 to 15c. This, it had a perfect right to do and was expected to do, otherwise it would not, of course, have gone into the business.

"The only feature of the transaction taken into consideration by me is whether or not the plaintiff's interests were properly safeguarded as against the defendant, and whether or not a reasonable and proper price was secured or contracted for."

The liquid chlorine contract was not discovered until after the contract for extending the agency for three years had been made, and did not come to the knowledge of the directors of Mathieson until after Arnold's resignation took effect.

Upon the stick caustic transactions and the liquid chlorine contract the master made this statement:

"Whether or not this contract or the stick caustic deals when taken alone or together, constitute actual or deliberate fraud, they do, in my opinion, show a subordination of the interests of the plaintiff to those of the defendant, which, at the option of the former, offers justification for the severance of business dealings between the parties, and for a rejection of the agency contracts then existing or negotiated."

It was not necessary that actual fraud be found to justify a repudiation of the agency contract. It was sufficient that knowledge had been obtained since it was made to show that its selling agent was untrustworthy. The court erred in holding that these transactions did not warrant a repudiation of the new agency contract.

The master also found that a rebate which had been paid Arnold-Hoffman on liquid chlorine of $2,419.54, being the rebate given from the price of 6 cents per pound in the former contract expiring August 22, 1919, to 4½ cents per pound on that furnished between that date and the date of the new liquid chlorine contract, September 8, 1919, should not have been given, and the District Court affirmed this finding, which was correct.

Because of a mistake in charging commissions, the master found that the plaintiff was entitled to an accounting of $1,824.99, "being the amount of commission charged on the freight of goods furnished, it having been provided in the contract between the parties that the defendant was entitled to a 3% commission only upon 'the net price f. o. b. exclusive of freight.'" This was affirmed by the court.

The master and the court correctly found that the plaintiff was entitled to an accounting for amounts paid to defendant as com-

mission on export sales made by the plaintiff under a contract with the United States Alkali Export Association, under which the latter was to receive a commission on all export sales; that about $14,000 or $15,000 worth of goods were sold under this contract, upon which the defendant collected a commission of 3 per cent.; that this was the result of an unintentional error, and no commission should have been paid to the defendant. This is affirmed.

In all other matters in controversy between the parties the master found that the defenses of acquiescence and accounts stated were sustained, and his finding has been affirmed by the court. There was a large amount of testimony taken by the master in regard to these matters. We have carefully examined this, as well as the exhaustive briefs of counsel, and cannot say that the findings of the master affirmed by the District Court are not supported by substantial evidence. The only disagreements between the master and the District Judge relate solely to the stick caustic transactions and to the repudiation of the new agency contract. We have reached the conclusion that the findings of the master as to these should have been affirmed, but that there should be an accounting as hereinafter provided.

The finding of the master, in relation to the bills in equity in which John R. Gladding was the defendant, that the allegations in these bills were not sustained, was correctly affirmed by the court.

Law action No. 1383 was brought by Arnold-Hoffman against Mathieson to recover for repudiation by Mathieson of the contract dated June 12, 1919, but not executed until September 8, 1919, appointing Arnold-Hoffman selling agent for three years from December 31, 1919. As an answer Mathieson filed the same allegations which were contained in its bill of complaint against Arnold-Hoffman. The issue raised was disposed of by what has been said about the bill in equity.

Law action No. 1385 was brought by Arnold-Hoffman against Mathieson to recover for the breach by Mathieson of contracts to deliver certain chemicals, and for sundry commissions claimed to be due it under the earlier contract of December 1, 1914. To this action Mathieson filed an answer which in substance was the allegations in its two bills in equity, and the court has found that these constitute no defense to any count in this declaration except the count on the liquid chlorine contract.

In our opinion they do constitute a defense also to the stick caustic contracts.

Upon the declaration in this case the master said:

"There is undoubtedly authority for the contention that an agent loses all right to compensation in case of a breach of its obligation touching the essence of the agency contract. But, in the case before us, where a breach of the agency obligation has been found in practically but two particulars, namely, the stick caustic and liquid chlorine contracts, although the dealings between the parties involved a very large number of contracts and sums of money running into millions, I think the application of that rule would be excessively harsh and inequitable treatment."

In law action No. 1385 he therefore found for Mathieson on the count which applied to the liquid chlorine contracts, and also upon the eighth and ninth counts which were inserted as additional counts by the plaintiff because of doubt as to whether the cause of action set forth in the fifth and sixth counts of its declaration should be in assumpsit or in covenant, and these were added as counts in covenant; the fifth and sixth counts being in assumpsit.

The effect of the decision of the District Court was to find that the answer of the defendant was not sustained except as to the fourth count under said action, being the count upon the liquid chlorine contract.

The District Court also found that by agreement of parties Mathieson should recover of Arnold-Hoffman the sum of $10,000, being amount agreed upon as compensation for the use of cylinders in which liquid chlorine was shipped, and that Mathieson should have execution for said sum. This we affirm.

By a tentative agreement the rebate on liquid chlorine of $2,419.54 was paid to the plaintiff, and the court has found that it is entitled to retain the same. This is affirmed.

The master's finding in regard to stick caustic was that the plaintiff was entitled to an accounting "upon such basis as may later be determined, after this original question of liability to account shall have been passed upon by the court on proper appeal, or further proceedings."

This finding was reversed by the court, but the master's finding in regard to liquid chlorine was affirmed. In both cases the master found that the defendant did not discharge the duty which as its sole selling agent it owed to the plaintiff. Having made this finding, he and the court should also have found, in accordance with the well-established rule of equity in regard to a breach of

fiduciary duty, that the defendant should account to the plaintiff and pay to it all the profits which were made by the defendant in the sale to others of liquid chlorine and stick caustic, which in the case of the latter was the subject of contracts between the plaintiff and the defendant after Arnold became president of Mathieson in 1916, and in the case of the former was the subject of the contract of September 8, 1916, between the plaintiff and defendant.

For the determination of these profits the plaintiff is entitled to a discovery of all the correspondence of the defendant in relation to the resale of the same, and also of all the contracts of resale made by it. For this discovery and determination the case may be remanded to the District Court.

The final decrees of the District Court in Nos. 129 and 130, Equity, are reversed, and the cases are remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in the action at law (No. 1385) is enjoined from prosecuting such action for all commissions growing out of the stick caustic contracts, the liquid chlorine contracts, and the breach of the new agency contract of September 8, 1919; the Mathieson Alkali Works to recover costs in said two bills of equity (Nos. 129 and 130) against Arnold, Hoffman & Co., Incorporated. In No. 1385 neither party recovers costs in the District Court.

The final decrees in Nos. 122 and 123, Equity, are affirmed, with costs of appeal to John R. Gladding. In both No. 2266 and 2267 the Mathieson Alkali Works recovers costs of appeal against Arnold, Hoffman & Co., Incorporated.